No. 16,302.

MacArthur, Manager of Safety and Excise of
Denver *v*. Wyscaver, doing business
as Midwest Music Company.
(211 P. [2d] 556)

Decided October 24, 1949.

Mr. J. Glenn Donaldson, Mr. Abe L. Hoffman, Mr. Ty R. Williams, for plaintiff in error.

Messrs. Johnson & Robertson, for defendant in error.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

G. Doyle Wyscaver, herein called plaintiff, made application to Harold A. MacArthur, manager of safety and excise of the City and County of Denver, for a license under the applicable provisions of chapter III, article I, 1927 Municipal Code, to operate a device, hereinafter described and known as "Chicago Coin Pistol," in each of two restaurants, one of which had a license to dispense intoxicating liquor by the drink, the other not having such license. While other grounds for denying the application admittedly might have been assigned the manager's refusal to issue said licenses was based upon the following, only: (1) Said machine constitutes a separate business and is prohibited by the liquor code in restaurants dispensing intoxicating liquor by the drink. (2) That the machine is a gambling device prohibited by the gambling laws of the state of Colorado.

Upon the denial of said applications plaintiff brought this action against the manager of safety and excise under rule 106, R.C.P., Colo., praying that a citation issue requiring him to show cause why said licenses should not be issued. The trial court found in favor of plaintiff and ordered defendant to issue the licenses for which application was made, to review which judgment the manager has sued out a writ of error.

A sufficient description of said machine for the purposes hereof is that, it consists of a highly decorative cabinet occupying approximately six square feet of floor space and is approximately four feet high. Mounted on top of the cabinet is a sign with the words "Chicago Coin Pistol Shoot For Fun"; it is similar to, but not identical with, the machine known as an "Electric Ray Gun" and is operated by inserting a nickel in the coin slot and thereafter pointing the pistol, which is mounted upon a swivel pedestal, at a target appearing on a vertical plane or scoreboard in the back of the machine; no pellet, ball or electric ray is projected from the gun, but the same is so arranged that if accurately aimed at the target at the time the trigger is pulled, an electric contact is made at

the base of the pistol causing the illumination of numbers up to thirty on the scoreboard and indicating the progressive score of the player; no prize, token or other thing of value is given out by the machine, and there appears to be no way in which it may be adjusted to do so.

Only two questions are presented for determination: (1) Is the presence and operation of Chicago Coin Pistol machines in restaurants having a license to sell intoxicating liquor by the drink prohibited by the liquor code of 1935 (article 2, chapter 89, '35 C.S.A.)? and (2) Is the Chicago Coin Pistol a gambling device within the meaning of the gambling laws?

■ With reference to the first question, and for reasons set forth in *City and County of Denver v. Gushurst,* 120 Colo. 465, 210 P. (2d) 616, we are convinced, and so hold, that the Chicago Coin Pistol machine, here considered, constitutes a separate and distinct business and is prohibited in restaurants which are licensed to sell intoxicating liquor by the drink.

■ Defendants in their brief intimate with respect to the second question that there may be some degree of skill required in the operation of the device, and plaintiff concedes that there is a slight element of chance involved therein. The parties do not agree as to the extent of skill required, and element of chance involved. There is no evidence that the machine had in fact been used or kept for gambling purposes in either of said establishments or elsewhere. Under the above circumstances, as will hereafter appear, the machine, in order to be a gambling device, must be one per se.

Section 234, chapter 48, '35 C.S.A., provides: "It shall be the duty of all sheriffs, coroners, constables, police officers of cities, and other officers charged with executing the laws of this state, whenever it shall come to the knowlege of any such officer that any person has in his possession any cards, tables, checks, balls, wheels or gambling devices of any nature or kind, used or kept for

the purpose of gambling or playing at any game of chance; or that any cards, tables, checks, balls, wheels or gambling devices used or kept for the purposes aforesaid may be found in any place, to seize and take such cards, tables, checks, balls, wheels or gambling devices, and convey the same before some judge or justice of the peace of the county in which the same may be found; and it shall be the duty of such judge or justice of the peace to inquire of such witnesses as he shall summon to appear before him in that behalf, touching the nature of such gambling devices, and if such judge or justice shall ascertain that the same are used or kept for the purpose of gambling or playing at any game or games of chance, it shall be his duty to destroy the same. It shall be lawful for officers in executing the duties imposed upon them by this section to break open doors for the purpose of obtaining possession of any such gambling devices; and all persons having possession of any of the articles aforesaid shall be conveyed before some judge or justice of the peace of the county in which they may be found, and held or committed for appearance at the next term of the district court to answer to any indictment or information which may be preferred against them or any of them."

The legislature in the enactment of the above statute, as is apparent, did not define "gambling devices," nor set up definite standards by which the courts may determine whether or not a particular machine is a gambling device per se.

In determining the above question the following rules announced in *Everhart v. People*, 54 Colo. 272, 130 Pac. 1076, should be considered. "Much of the argument of counsel is predicated upon the assumption that in order to sustain the judgment of conviction, it is essential to hold that horse racing is unlawful within the intent of these statutes. The assumption is erroneous and cannot be upheld. Neither the keeping or exhibiting of a gaming table, establishment, device or apparatus, nor the

playing at a game is prohibited. On the contrary, such things, as far as these sections of the statute are concerned, may be done with impunity. It is only when such tables, etc., are kept or exhibited to win or gain money or property, or when the play at a game is for a sum of money or other property, or a bet is made upon the result of such game that the acts become unlawful and the doers thereof subject to punishment. Moreover, there can be a game without the element of either chance or hazard. A game is any sport or amusement, public or private. It includes physical contests whether of man or beast, when practiced for the purpose of deciding wagers or for the purpose of diversion, as well as games of hazard or skill by means of instruments or devices."

We held in *Kite v. People,* 32 Colo. 5, 74 Pac. 886, that a roulette wheel was a gambling device per se because "such was the only use to which it could reasonably be devoted," and we there approved a statement contained in *State v. Soucie's Hotel,* 95 Me. 518, that, "Gambling apparatus and implements are treated by the statute as noxious per se, and they are ordered destroyed to remove a danger imminent from their very existence, not merely to punish the owner for an unlawful use. The statute by its terms strikes at the thing itself, and not at any act or intent of its owner."

The articles considered in *Stanley-Thompson Liquor Co. v. People,* 63 Colo. 456, 168 Pac. 750, were admittedly gambling devices, and the court found from the evidence that they could be used for no other purpose. We there held that such devices were gambling devices under the statute there and here involved, irrespective of whether they were in storage or in actual use for gambling purposes, and that, "if an instrument can have no lawful use, it must be presumed, in the absence of evidence to the contrary, that an illegal use is intended." In other words the gambling instruments there under consideration were held to be gambling devices per se.

Defendants cite *Walker v. Begole,* 99 Colo. 471, 63 P. (2d) 1224, in support of their argument that the machine here in question is a gambling device, notwithstanding the absence of any evidence that it was ever kept or used for such purposes. We in that case laid down the rule that any instrument which is actually used and kept for gambling purposes may be a gambling device within the meaning of the statute even though the machine itself be of a nonpay-off variety.

The case of *Gambling Devices v. People, ex rel.,* 110 Colo. 82, 130 P. (2d) 920, involved a number of pinball machines which were still in their original cartons in storage. The trial court held that the machines were gambling devices and ordered them destroyed. An attempt was made by the owners to distinguish the instruments involved from the one considered in the *Stanley-Thompson Liquor Co. v. People* case, because it could be changed from a gambling device to one of amusement by merely releasing a simple gadget on the instrument. In disposing of that contention we said: "An effort was made here to avoid the holding of the Stanley-Thompson case by showing that the 'pinball' machines—most of the machines seized were of this class—were so constructed that a release of a simple gadget in the back of them would make it impossible to play the machines for anything but amusement—a switch to turn the sin on or off, so to speak. But the flaw in this argument is that at the time the machines were seized and demonstrated in court they were set to function for gambling purposes. The test was not whether there was a possibility of their being used for amusement purposes, but their reasonably intended use and their inherent tendency to stimulate the gambling instinct latent in many people. These pinball machines are gambling devices, and held to be so by a majority of courts."

It is conceded in the present case that the Chicago Coin Pistol machine is not equipped with a gadget by

which it may be converted from a device for amusement into one for gambling.

We conclude that the Chicago Coin Pistol machine herein described is an amusement device subject to regulation and license under the provisions of chapter III, article I, 1927 Municipal Code of the City and County of Denver, and not a gambling device per se within the meaning of section 234, chapter 48, '35 C.S.A.; that said machine may become a gambling device, if and when it is actually used or kept for gambling purposes.

The judgment of the trial court is accordingly affirmed in part and reversed in part, and the cause remanded with instructions to enter judgment in accordance with the views herein expressed.