PAULA LOECHNER, PLAINTIFF-RESPONDENT, v. JOSEPH A. CAMPOLI, MAYOR AND COUNCIL OF THE BOROUGH OF CRESSKILL AND PLANNING BOARD OF THE BOR-OUGH OF CRESSKILL, DEFENDANTS-APPELLANTS.

Argued May 8 and 9, 1967—Decided July 5, 1967.

*Mr. Raphael G. Jacobs* argued the cause for respondent (*Mr. Edward Freint,* attorney).

*Mr. Christian Bollermann* argued the cause for appellants.

The opinion of the court was delivered by

HANEMAN, J. This is an appeal from a summary judgment of the Law Division directing the building inspector of the Borough of Cresskill to issue a building permit to plaintiff. During the pendency of defendant's appeal from that judgment to the Appellate Division, the appeal was removed to this Court on defendant's motion for certification. (*R. R.* 1 :10–1A.)

On January 15, 1900, there was filed in the County Clerk's Office of Bergen County a map designated "Hitchcock Land Improvement Company's Map of Cresskill Park, Bergen County, New Jersey" (Hitchcock map). The said filing was accomplished under and by virtue of *L.* 1898, *c.* 232 (subsequently supplemented by *R. S.* 46 :23–1 *et seq.*).

By deed dated June 4, 1937 plaintiff and her late husband acquired title as tenants by the entirety to lands known and designated as Lots 186, 187 and 188 on the Hitchcock map. These lots were each of the dimensions of 25 feet in width or street frontage, by 100 feet in depth. Thereafter and prior to the year 1952 the Loechners erected a dwelling house on said Lots 186, 187 and 188.

By deed dated January 16, 1952 Rudolph Loechner acquired title to two adjoining vacant lots, *i. e.,* 189 and 190, with a total street frontage of 50 feet, from the Borough of Cresskill. These lots still are vacant, unimproved land but the general area is well built up. The sale of said lands was allegedly made pursuant to a municipal practice of selling undersized lots to adjoining owners for the purpose of combining the properties into one tract. However, no restrictions prohibiting the future use of the property for the erection of buildings were included in the deed. At that time, the Cresskill Zoning Ordinance required a minimum lot frontage of 75 feet in the zone in which these lands are located. Subsequently the frontage proviso was increased to the present 100 feet. Rudolph Loechner thereafter died and devised Lots 189 and 190 to his wife, the plaintiff herein. Plaintiff then entered into an agreement to sell Lots 189 and 190 to Anthony Villani. Villani, prior to conveyance to him, applied to the Board of Adjustment for a variance in order to erect a residence on said lots. He did not disclose the fact that the adjoining lots were in the same ownership. The variance was granted. Thereafter, application for a building permit was refused on the ground that the approval of the Planning Board was required since a subdivision was involved. Plaintiff applied to the Planning Board and subdivision approval was denied for the reason that if such were granted, an undersized building lot would be created in violation of the zoning ordinance. On appeal to the Mayor and Council the refusal was affirmed on the same grounds.

In an action in lieu of prerogative writ contesting the municipal action, plaintiff assumed the position that no sub-

division approval was required because her five lots were delineated on a map filed under the Old Map Act thereby rendering the Subdivision Act inapplicable. The Borough contended that: (1) Planning Board approval of plaintiff's contemplated conveyance of Lots 189 and 190 was required as that action constituted a subdivision, regardless of whether the lots had been delineated upon a map filed prior to the enactment of the Subdivision Act. There having been a denial of plaintiff's application to the Planning Board, no building permit for the lots should issue; and (2) The matter should be remanded to the Zoning Board for reconsideration of the variance because of the fact that the Zoning Board did not know that (a) the owner of Lots 189 and 190 was also the owner of contiguous lots, and (b) the clear understanding at the time of acquisition of title to Lots 189 and 190 was that they would be combined with the contiguous lots to form one tract of land. Both parties moved for summary judgment. Plaintiff prevailed, the court finding that (1) the variance was valid, and (2) no subdivision approval was required as all five contiguous lots owned by plaintiff including the two here involved appeared on a map under the Old Map Act.

The pivotal question is whether the sale of two contiguous lots out of a group of five lots, all in one ownership and delineated on a map filed under the Old Map Act, is a subdivision and whether Planning Board consent to the said conveyance of the two lots is required.

The acquisition of title by plaintiff to Lots 189 and 190 which were contiguous to Lots 186–188 created one parcel or tract of land consisting of five separate lots as shown on the Hitchcock map. Plaintiff's contemplated conveyance of Lots 189 and 190 thereafter constitutes a prospective subdivision and requires the advance approval of the Planning Board unless she prevails on her argument that the delineation of these two lots on a filed map precludes the application of the subdivision statute and/or ordinance.

*N. J. S. A.* 40 :55–1.2 defines a subdivision as follows:

"* * * the division of a lot, tract, or parcel of land into two or more lots, sites or other divisions of land for the purpose, whether immediate or future, of sale or building development; except that the following divisions shall not be considered subdivisions within the meaning of this act; *provided however*, that no new streets or roads are involved: divisions of land for agricultural purposes where the resulting parcels are three acres or larger in size, divisions of property by testamentary or intestate provisions, or divisions of property upon court order. Subdivision also includes resubdivision, and where appropriate to the context, relates to the process of subdividing or to the lands or territory divided."

Cresskill Ordinance No. 348, Article IV, Section 1 provides:

" 'The division or redivision of a lot, tract or parcel of land into two or more lots, sites or other divisions of land for the purpose whether immediate or future, of sale or conveyances, or of building development, shall constitute a subdivision. Where appropriate to the context, the term subdivision shall also mean the process of subdividing or re-subdividing, and to the lands or territory so divided.' "

Plaintiff relies primarily upon *Goldstein v. Borough of Lincoln Park Planning Board*, 52 *N. J. Super.* 44, at *p.* 50 (*App. Div.* 1958), where the court said:

"We are of the opinion that a sale of lots which does not disturb the existing lot lines on an already filed map can in no sense be considered a 'subdivision' within the meaning of the statute. Had the Goldstein holdings been owned by a number of individuals, each of whom desired to convey his lot, there would have been no 'division of a lot, tract, or parcel.' We do not see wherein a different result should obtain simply because all the already divided lots were owned by one party or by related parties."

We do not agree with the above quoted reasoning in *Goldstein*. It is based on the fallacious premise that once there exists a delineation of lots on a map filed under the Old Map Act, the initial and all subsequent owners become irrevocably vested with a right in those lots which prevents the exercise of the police power to limit the use of such lots through dimension or area guides. The reasoning continues that the individual lots never lose their separate identities regardless of how many contiguous lots remain in or are

reassembled into one ownership. No group of adjacent lots can ever thereafter comprise a single parcel; they continue as numerous, distinct lots.

This reasoning ignores the difference in purposes of the two acts. The objectives of the Old Map Act and the Subdivision Act are completely different. The history and basic purposes of the Old Map Act are aptly stated in *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills*, 28 *N. J.* 423, at *p.* 433 (1958). Concerning that act the court stated:

"Basically the act was intended (a) to provide a method for officially filing maps so that future conveyancing instruments might refer to a parcel of realty by reference to the lot numbers as delineated on the map, and (b) to set forth sound engineering standards for maps so filed so as to avoid surveying errors; * * *"

On the other hand, concerning the Planning Act of 1953 the court said at *p.* 435:

"The latter act was designed to afford municipalities desiring the advantages of its provisions to enact comprehensive regulatory standards which would facilitate sound and orderly future municipal growth along preconceived lines, in short a planned community growth."

The word "lot" as used in the Subdivision Act must be read in context with the words "tract or parcel of land" in order to ascertain its meaning. Consistent with recognized principles of statutory construction "lot" takes its meaning from the other two words with which it is associated. *Martell v. Lane*, 22 *N. J.* 110 (1956); *Salz v. State House Commission*, 18 *N. J.* 106 (1955); *State v. Murzda*, 116 *N. J. L.* 219 (*E. & A. 1936*); 2 *Sutherland, Statutory Construction* § 4908 (3*d ed.* 1443). Thus considered "lot" is synonymous with "tract or parcel." The phrase "lot, tract or parcel of land" has traditionally been used to connote any portion or piece of realty. *N. J. S. A.* 40:55-1.2 contemplates supervision of the division of a large tract or parcel of land into two or more smaller tracts or parcels. The Subdivision Act is not concerned with the manner in which land

is described for conveyance purposes but rather with what use is made thereof.

█ The approval of a map under the Old Map Act is subject to a subsequent valid exercise of the police power.

In *Ardolino v. Borough of Florham Park Board of Adjustment*, 24 *N. J.* 94, at *p.* 103 (1957), the court said:

"While the more recent legislation in the zoning and planning field looks forward to an ideal relationship between the zoning requirements and the subdivision of land into lots or parcels, *N. J. S. A.* 40:55–1.15, the mere delineation of lots on a map filed after approval by a municipality carries with it no guaranty that each lot or parcel will be sufficient in itself to be built upon when the time comes to do so, *Herman v. Board of Adjustment, Parsippany-Troy Hills Tp.*, 29 *N. J. Super.* 164, 171, 172 (*App. Div.* 1953), *Rodee v. Lee*, 14 *N. J. Super.* 188 (*Law Div.* 1951), *supra.* And this is particularly so when lots do not conform to the zoning requirements in effect at the time of their delineation. On the contrary, the use of land is subordinate to a valid exercise by a municipality of its power to zone and control land use within its boundaries, *Collins v. Board of Adjustment of Margate City*, 3 *N. J.* 200, 205, 206 (1949), *Bassett, Zoning* (1940), 108, 178, including the power to make reasonable changes in such regulations consistent with public good, *Greenway Homes v. Borough of River Edge*, 137 *N. J. L.* 453 (*Sup. Ct.* 1948), 8 *McQuillan, Municipal Corporations* (3*d ed.*), *sec.* 25.133. In the *Collins* case, *supra*, Mr. Justice Heher, speaking for an unanimous court stated:

'* * * All property is held in subordination to the police power; and the correlative restrictions upon individual rights—either of person or of property—are incidents of the social order, deemed a negligible loss compared with the resultant advantages to the community as a whole, if not, indeed, fully recompensed by the common benefits.' 3 *N. J.* 206."

█ It follows that filing under the Old Map Act does not result in immunity from the operative effect of the Subdivision Act and a zoning ordinance may therefore establish an area or dimension requirement different from the area or dimension of lots as shown on said map. Any reduction in the size of a parcel or tract of land by a division into two or more smaller parcels is in the language of the Subdivision Act a "subdivision" and subject to the statutory terms. See *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills Tp.*, 47 *N. J. Super.* 334 (*Law Div.* 1957) aff'd 28 *N. J.* 423

(1958). The separation of Lots 189 and 190 from the balance of the lots owned by plaintiff constituted a subdivision.

Matters of minimum lot size, whether or not the lot in question was delineated on a map filed under an Old Map Act, present a zoning problem. The question is how to accommodate the respective roles of the planning board and the board of adjustment where a subdivision will result in a lot of dimensions less than those required under a current zoning ordinance.

For future guidance, the mechanics of procedure to obtain subdivision approval from a planning board, where the resulting parcels do not meet the requirements of the zoning ordinance, should be as follows: The original application for approval, whether or not it is then known that the result desired by the applicant will breach the minimum zoning requirements, should be made to the planning board. If the planning board finds that the application meets all of the required tests except for lot size or dimensions, it should approve such subdivision subject to approval of a variance by the zoning board of adjustment. The planning board may, with its approval express its non-binding opinion as to whether the variance would be conducive to or detrimental to the planning scheme because of the undersize of a lot.

Although a variance was obtained here it was granted by the Board of Adjustment without a full consideration of the facts. The applicant, Anthony Villani, the equitable title holder, failed to apprize the board of the fact that Mrs. Loechner, the legal title holder also owned the adjoining lots. This plus the alleged fact that Lots 189 and 190 were conveyed for a nominal consideration in order that they be combined with lots already owned were two important facts which should have been before the board. As it was the board thought the facts were such that a hardship variance was automatically required.

The decision of the Law Division is reversed. The variance grant by the Board of Adjustment is hereby set

aside for failure first to apply to the Planning Board. However, the action of the Planning Board in denying subdivision approval on zoning considerations cannot be sustained. The case is remanded to the Planning Board for reconsideration with directions to permit Mrs. Loechner to apply to the Board of Adjustment for a variance in accordance with the procedure outlined above, if the only objection to the subdivision is the deficiency in lot size under the zoning ordinance.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.