143 N.J. Super. 295 (1976)
362 A.2d 1289
CHARLES C. HOLJES AND HELEN A. HOFF, PLAINTIFFS,
v.
THE PLANNING BOARD OF THE TOWNSHIP OF ALEXANDRIA; THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF ALEXANDRIA; THE TOWNSHIP OF ALEXANDRIA, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 30, 1976.
*296 Mr. Robert Benbrook for plaintiffs (Messrs. Morrow & Benbrook, attorneys).
Mr. R. Dale Winget for defendants (Messrs. Winget & Keating, attorneys).
BEETEL, J.C.C., Temporarily Assigned.
This is an action in lieu of prerogative writs wherein plaintiffs seek to set aside the decision of the Alexandria Township Committee (committee) affirming the decision of the Alexandria Township Planning Board (planning board) denying plaintiffs' request for subdivision approval. Plaintiffs seek an order directing these bodies to give full force and effect to a variance granted by the Alexandria Township Board of Adjustment (zoning board) during the course of plaintiffs' attempt to *297 gain subdivision approval. Suit was filed on May 23, 1975; the pretrial was held on February 20, 1976; and arguments, based on the record before the municipal bodies, were heard on May 11, 1976, at which time, decision was reserved.
The primary issue involves what effect, if any, the zoning board's variance should have upon the grant or denial of subdivision approval by the planning board and the committee.
On May 5, 1943, before the enactment of land use regulations by Alexandria Township plaintiffs acquired approximately 58 acres of vacant land currently identified on the township tax map as Lot 58, Block 10. In 1964 plaintiffs obtained subdivision approval for a three-acre tract which they sold to Isaac Schneider, who built a residential dwelling thereon. On June 22, 1974 plaintiffs entered into a written contract to sell the southwesterly 11.38 acres of the remaining 55-acre tract to Salvatore and Phyllis DeSabatino contingent upon the issuance of a building permit for the future construction of a residential dwelling on this new lot. The sale was brokered by Jerome Malaker, an employee of the Karlton Realty Company.
Alexandria Township is a predominantly rural municipality. Its current zoning ordinances place plaintiffs' still vacant lot in a residential zone requiring an area of 1 1/2 acres with 200' of frontage along a public road. Plaintiffs' lot undisputedly does not front on a public road, but it is bounded by a private road or driftway. The entire lot has 1,503' of frontage on this roadway, and the proposed subdivision has 609.65' frontage.
In August 1974 plaintiffs appeared at the regular meeting of the planning board and informally explained to this body their plan to seek subdivision approval for the pending sale. In an equally informal manner plaintiffs were told of the procedural steps that would be required and the likelihood that their application would be denied because the parcel did not front on a public road. Plaintiffs assert that they were also told that once their application was denied by *298 the planning board, they could then petition the zoning board for a variance.
In September 1974 plaintiffs filed their subdivision application and on October 2, 1974 Jerome Malaker, the broker, appeared before the planning board to make a formal request for subdivision approval. Plaintiffs were abroad at this time and now claim that Malaker did not represent them, but rather the buyers. In any event, the planning board denied the application. A week later, October 9, 1974, Malaker appeared before the township committee. He made no formal appeal at this time but apparently appeared to preserve whatever rights the parties may have had to appeal. The committee took no definitive action and merely ordered its clerk to obtain the minutes and the resolution of the planning board pertinent to the matter.
Upon their return from abroad plaintiffs retained legal counsel and applied to the zoning board for a variance from the requirement that a lot abut a public road. On December 9, 1974 the zoning board held public hearings on this application and conducted site inspection of the property on December 14, 1974. At its meeting on December 16, 1974 the zoning board adopted a resolution, by a 3-2 vote, approving plaintiffs' application for a variance. The resolution contained findings of fact directed primarily to the character of the private road or driftway bordering plaintiffs' property. The zoning board found that the roadway had a surface that consisted primarily of hard-packed dirt; that the width of the roadway varied from 10' to 16'; that motor vehicles could safely negotiate the terrain; that it is now passable for fire-fighting equipment, ambulances and other emergency vehicles; that the roadway did not appear to be of record, but had been used "as far as memory serves," and that the roadway presently serves as the only means of ingress and egress for several residential properties.
Armed with this variance plaintiffs appeared before the planning board on January 2, 1975. Again, the planning board refused to grant subdivision approval, stating that the *299 zoning board lacked jurisdiction to vary the requirements for subdivision approval. On February 5, 1975 the planning board formally adopted a resolution to this effect. One week later, February 12, 1975, plaintiffs appeared at the township committee's regular meeting to appeal the decision of the planning board and the Committee scheduled a formal hearing for the following month. On March 12, 1975 this hearing was held and the committee affirmed the actions of the planning board by a 2-1 vote. On April 9, 1975 a formal resolution to this effect was adopted.
Plaintiffs make two contentions. First, they assert that the actions of the planning board and the township committee in denying subdivision approval were arbitrary, capricious and unreasonable, and constituted a denial of equal protection guaranteed by our State and Federal Constitutions. Secondly, they assert that the planning board and the township committee were bound to give full force and effect to the decision of the zoning board granting them a variance from the requirement that residential dwellings have frontage upon an approved road. In their complaint plaintiffs do not challenge the validity of the subdivision and zoning ordinances enacted by the township.
It is clear that plaintiffs' proposed subdivision falls within the category of a major subdivision as defined in the township subdivision ordinances. Among the definitions of a major subdivision contained in Article IV, §§ 4 and 5 of these ordinances, is one where there is no frontage upon any existing state, county or municipal road. Although Article VII of the subdivision ordinances provides an exception to this classification for certain "low density," one-lot subdivisions, plaintiffs' proposal did not meet the requirements of this exception. There is nothing impermissible about such a classification. N.J.S.A. 40:55-1.14; Princeton Research Lands, Inc. v. Princeton Tp. Planning Bd., 112 N.J. Super. 467 (App. Div. 1970).
Since plaintiffs' proposed subdivision fell within the category of a major subdivision, approval was conditioned upon *300 compliance with the requirements set forth in Articles VIII, IX, and X of the township subdivision ordinances enacted pursuant to the enabling legislation found in the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq. Among these requirements are:
Each lot must front upon an approved street at least 50 feet in width * * *. [Article X, § 4(c)]
All streets should be graded and provided with all weather surfacing * * *. [Article IX, § 1(a)]
These sections implement the legislative mandate, found in N.J.S.A. 40:55-1.20, that "streets shall be of sufficient width and suitable grade and suitably located to accommodate the prospective traffic, to provide access for fire-fighting equipment to buildings and to be co-ordinated so as to compose a convenient system * * * relating properly to the existing street system."
Plaintiffs argue, however, that the private road or driftway abutting their property fulfills the statutory requirements of N.J.S.A. 40:55-1.20 since, as the zoning board so found, motor vehicles, including emergency vehicles, can safely negotiate the roadway. They argue further that the subdivision ordinance requiring a paved street 50 feet in width is too stringent a requirement and thus, in essence, beyond the scope of the enabling legislation.
There is no merit to the argument. First, plaintiffs did not challenge the validity of the ordinances in their complaint, and secondly, the cases they rely upon to support this assertion are either clearly distinguishable or directly contrary to the proposition they are cited to support. In Brazer v. Mountainside, 55 N.J. 456 (1970), our Supreme Court stated unequivocally that "there has never been any doubt in this state that the statutory provisions authorizing a municipal requirement of approval of subdivision plats, including the design and location of streets, * * * are valid exercises of the police power," (at 465), and "there is no right to a subdivision where there is no proper street access *301 (at 470). Here, there is no question that a rational nexus exists between the need for a proper street facility and the benefit an improved roadway would confer upon plaintiffs' subdivision. See Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 441-443 (1958). The 50-foot width requirement is explicitly approved by the language of N.J.S.A. 40:55-1.20.
Plaintiffs' application for subdivision approval made no provision for improving their access route along an unpaved, unrecorded and narrow private roadway. In light of the customary resolution of doubt in favor of municipal planning actions, Levin v. Livingston Tp., 35 N.J. 500 (1961), and the undisputed facts of this case, plaintiffs' claim that denial of their subdivision application was arbitrary, capricious, unreasonable, and unconstitutional is simply untenable.
Plaintiffs' principal argument relates to the applicability of the variance granted by the zoning board. Article V, § 1, of the township zoning ordinances provides that "[e]very lot shall have the required frontage on a public road or upon an approved major subdivision road." This section was enacted pursuant to N.J.S.A. 40:55-1.39 which requires that a building lot abut a street giving access to any proposed structure. Acting upon the authority contained N.J.S.A. 40:55-1.40[1] and N.J.S.A. 40:55-39(c) to vary this requirement in hardship cases, the zoning board granted plaintiffs a variance exempting them from the requirement that their building lot abut a public road.
*302 Plaintiffs assert that this variance not only waives the requirements of the township zoning ordinances but also waives the requirements of the township subdivision ordinances. In support of this they cite Loechner v. Campoli, 49 N.J. 504 (1967), which may be read to hold that whenever an application for subdivision approval meets all the required tests except for noncompliance with the zoning ordinances, the planning board must approve the application conditioned upon subsequent favorable action by the zoning board of adjustment. Plaintiffs concede that Loechner is distinguishable because it dealt with the single-step procedure of gaining minor subdivision approval rather than the three-step procedure involved in obtaining major subdivision approval, as is the case here. They urge that the reasoning of Loechner compels a planning board to first classify the subdivision as minor or major, then (if the subdivision is major) before tentative approval refer the application to the board of adjustment for any required variances.
Whatever merit this suggested procedure may have, plaintiffs' argument fails to take account of the basic assumption underlying the procedure mandated by Loechner. That decision premised referral to the zoning board of adjustment upon a finding that zoning considerations are the sole reason standing in the way of subdivision approval. There, the applicant's lot failed to comply with the minimum lot size requirements of the borough's zoning ordinances, a deficiency the court described as a "zoning problem." Here, plaintiffs' proposed new lot fails to comply with both the township zoning and subdivision ordinances because it does not abut a public road. Thus to implement the jurisdiction of the zoning board, the deficiency must be a zoning problem, and the issue here boils down to whether provisions regarding street facilities present a zoning problem or a planning problem.
"Zoning and planning Legislation is cognate and complementary, but each Legislative provision is to be construed in the light of its own unique purposes and objects." Mansfield *303 and Swett, Inc. v. West Orange, 120 N.J.L. 145, 149 (Sup. Ct. 1938). The general powers conferred by zoning legislation relate primarily to the size and height of structures, the size of lots and the use to which such structures are put. N.J.S.A. 40:55-30. Subdivision legislation, classified in our State under the rubric of planning, relates primarily to the proper platting of vacant land so that streets, utilities and drainage rights-of-way conform to some orderly plan of development. N.J.S.A. 40:55-1.20. Thus it seems almost self-evident that street facilities are fundamentally the concern of the agency charged with overseeing planning functions.
In the case of Cella v. Cedar Grove Bd. of Adj., 45 N.J. Super. 585 (Law Div. 1957), a developer had applied for and obtained preliminary subdivision approval for a major subdivision. Before final subdivision approval was sought or obtained the developer applied for and obtained a building permit and erected a house on one of the lots in the subdivision. Upon completion the developer had applied for a certificate of occupancy, when the mistake was discovered and the certificate refused. The developer then applied to the board of adjustment for relief under N.J.S.A. 40:55-39. The board of adjustment contended that it had jurisdiction to hear the matter under either N.J.S.A. 40:55-39 or under N.J.S.A. 40:55-1.39, 1.40.
The court held that the refusal to grant the certificate of occupancy was not predicated on an infraction of the Zoning Act; it was occasioned by noncompliance with the requirements of subdivision, namely, lack of proper street facilities. The court said that the case was not even remotely related to a zoning case. So, also, was the board of adjustment found to be lacking in jurisdiction insofar as the issuance of the certificate of occupancy was concerned. The court noted that in the absence of an express statutory provision, the appeal from a denial of the certificate of occupancy must be by way of action in lieu of prerogative writs.
*304 In Noble v. Mendham Tp. Committee, 91 N.J. Super. 111 (App. Div. 1966), the court made the following observations:
The planning board's duty is to protect the public and future owners of property in (a) subdivision by requiring, among other conditions, adequate road facilities. * * * Where a proposed subdivision requires action by diverse municipal agencies, it would be the antithesis of "a systematic development contrived to promote the common interest," to hold that the planning board cannot act as a co-ordinating body. [at 119-120]
Based upon these cases and the purposes of zoning and planning, this court holds that street facilities are a planning problem, and therefore the Zoning Board here had no jurisdiction to grant a variance from the requirements of the subdivision ordinances.
This holding in no way conflicts with the authority conferred upon a zoning board of adjustment to grant variances under N.J.S.A. 40:55-1.40. This provision is designed for building lots which are not to be subdivided. Hence, had plaintiffs here desired to build on their 55-acre tract without subdividing off the 11 acres, their remedy would have been with the zoning board. Having chosen to subdivide, plaintiffs must comply with the subdivision ordinances. This court will not countenance plaintiffs' attempted circumvention of the subdivision regulations simply because it is a cheaper method of achieving their desired result.
It should be pointed out that this decision does not leave the plaintiffs without remedy. They are still free to seek subdivision approval from the planning board so long as they come forward with a plan to improve their access route which satisfies the reasonable requirements of that body. Admittedly, this places an additional economic burden upon them, but the improvement will inure to their benefit and the cost can be passed on to the purchasers of this lot.
Plaintiffs' final argument is that the planning board is equitably estopped from disregarding the zoning variance *305 since it advised them to petition the zoning board. It is not doubted that "[m]unicipalities, like individuals, are bound by principles of fair dealing * * *. [e]quitable principles of estoppel will be applied against municipalities `where the interests of justice, morality and common fairness clearly dictate that course.'" Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 131 (1965). Thus, assuming that the planning board did advise plaintiffs to apply to the zoning board (there is a paucity of proof on this point), the issue raised is whether plaintiffs "with good reason and in good faith" relied upon the planning board's alleged representation that they could seek approval from the Zoning Board. Summer Cottagers' Ass'n of Cape May v. Cape May, 19 N.J. 493, 503 (1955).
It should be pointed out that this is not the first time these plaintiffs sought subdivision approval. Earlier, they were successful, and at that time they dealt only with the planning board. Thus, they should have been on notice that the allegedly recommended procedure of going to the zoning board was at least a departure from past practice. Also, it is clear that the proceedings before the zoning board were much less involved and much less costly than full-fledged major subdivision approval. Hence, plaintiffs may well have decided not to question the asserted representation of the planning board that they could proceed before the zoning board, because this appeared to be the route of least resistance and a method offering an easy solution. Lastly, plaintiffs did not appear before the planning board personally, nor did they appear through counsel, but rather chose to be represented by a broker who, they now claim, did not in fact represent them. In short, the equities simply do not preponderate in plaintiffs' favor, and their claimed estoppel must fail.
This case is illustrative of one of the problems which led to the recent passage of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. (L. 1975, c. 291), which will go into partial effect on August 1, 1976. Under this new law applicants *306 for subdivision approval will no longer be required to seek variances from more than one municipal agency. N.J.S.A. 40:55D-25, 40:55D-60, and 40:55D-76 (L. 1975, c. 291, §§ 16a(6), 47 and 63(b)). It is hoped that this new law will prevent the abuses, by both municipal agencies and applicants, inherent in a process permitting two independent bodies to consider applications for the same relief without either having an authoritative final say in the matter.
Parenthetically, it might be noted that under this new law the result here would be the same. N.J.S.A. 40:55D-5 (L. 1975, c. 291, § 3.2) would have permitted the township to classify plaintiffs' subdivision as a "major subdivision." N.J.S.A. 40:55D-38 (L. 1975, c. 291, § 29b(2)) would have permitted the township to require the installation of an improved street as a condition for subdivision approval. The requirement that a building abut a public or approved subdivision street is still present. N.J.S.A. 40:55D-35 (L. 1975, c. 291, § 26). The only differences are that this new law makes it clear that a planning board may grant a variance from this requirement as part of its process of passing upon subdivision requests, N.J.S.A. 40:55D-36 and 40:55D-60 (L. 1975, c. 291, §§ 27 and 47(c)), and that a zoning board of adjustment may hear subdivision applications only where a use variance is necessary, N.J.S.A. 40:55D-70 and 40:55D-76 (L. 1975, c. 291, §§ 57(d) and 63(b)). In short, there could have been no confusion as to how plaintiffs should proceed  a single application to the planning board.
For the reasons previously set forth, judgment is entered against plaintiffs. The Alexandria Township Planning Board and Township Committee are not bound to give any controlling weight to the variance granted by the Alexandria Township Zoning Board of Adjustment. The parties are to pay their own costs.
NOTES
[1] By its terms, this statute applies where the administrative officer having charge of the issuance of building permits decides not to issue same. Appeal from his decision then lies to the zoning board of adjustment. Here the plaintiffs apparently did not apply for a building permit before petitioning the zoning board. Thus the jurisdiction of the zoning board is questionable. However, the decision in this case should not be based upon this technicality since more substantive reasons are present.