724 A.2d 34

**FRIENDS OF THE RIDGE et al.**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY.**

No. 76, Sept. Term, 1998.

Court of Appeals of Maryland.

Feb. 11, 1999.

646

J. Carroll Holzer, Towson, for petitioners.

John H. Zink, III (Patricia A. Malone, Venable, Baetjer and Howard, LLP, on brief), Towson, for respondent.

Argued before ELDRIDGE, CHASANOW, RAKER, WILNER, CATHELL, ROBERT L. KARWACKI (retired, specially assigned), and JOSEPH F. MURPHY, Jr. (specially assigned), JJ.

CATHELL, Judge.

In this case, Pamela and Carl Follo and Friends of the Ridge *et al.*, petitioners, appeal the affirmance by the Court of Special Appeals[1] of the decision of the Circuit Court for Baltimore County, which upheld the granting of a variance from side yard setback requirements to Baltimore Gas and Electric Company, respondent. Petitioners present three issues for our review, which we rearrange:

[1]. Whether the Court of Special Appeals' preference given to utility companies in this zoning case conflicts with this Court's decision in *Kahl vs. Consolidated Gas and Electric,* 191 Md. 249 [60 A.2d 754] (1949[1948])[.]

[2]. Whether in the absence of statutory authority, an electric utility company's status, *vel non,* as a utility, may be used to justify a zoning variance, generally, and the prerequisite of "uniqueness" specifically[.]

3. Whether the evidence relied on by the Court of Special Appeals in the instant case was sufficient to support a variance, both as to the uniqueness and practical difficulty, and whether its decision conflicts with the Court of Special Appeals' decision in *Cromwell vs. Ward,* 102 Md.App. 691 [651 A.2d 424] (1995)[.]

---

**1.** *Friends of the Ridge v. Baltimore Gas & Elec. Co.,* 120 Md.App. 444, 707 A.2d 866 (1998).

We shall not directly address the questions presented.[2] We shall direct that this case be remanded to the Baltimore County Board of Appeals (Board) with instructions to enter an order that no variance was needed in the case *sub judice*.[3]

Under the ordinance at issue here, and indeed in most ordinances of which we are aware, unless the ordinance's language specifically and clearly prohibits it, an owner of contiguous parcels of real property, such as respondent, is free to combine them into larger and fewer parcels without violating the *zoning* code. In this case we are concerned only with the zoning ordinance. We first shall recite the facts and conclude by furnishing the reasons for holding that no variance was necessary in the present case.

## FACTS

Respondent, at all times pertinent to the case at bar has operated a facility called the "Ivy Hill Substation," which is situated on one of the parcels it owns near the intersection of Falls and Ridge Roads in Baltimore County, Maryland. The site, and all of the relevant surrounding area, is zoned RC–5. Under that classification, public utility facilities are permitted

---

2. We note that Respondent argues that the provisions of the ordinance applicable to variances ("where special circumstances or conditions exist that are peculiar to the land or structure which is the subject of the variance request") should be read to indicate that a structure intended to be built once a variance is granted could itself be so unusual as to satisfy the uniqueness requirement of the statute. Under this argument, respondent contends that, given the characteristics of the equipment respondent proposes to erect and for which it seeks a variance, combined with the necessity that the equipment be within a certain distance of each other, its situation creates "peculiar or unusual circumstances relating to the substation *structures* which are the subject of the variance." Our failure to address this issue should not be construed as our approval or acceptance of that approach. We are reluctant to say that a proposition we are not resolving is wrong. Accordingly, we shall instead describe it as of doubtful logical force.

3. This is consistent with the Board's initial finding that no variance was necessary. The Board apparently felt it was required to address the variance issue because respondent filed a variance petition. Respondent may have filed the variance request because opponents to the project asserted that a variance was necessary.

as special exceptions if they comply with the requirements of the Baltimore County zoning ordinance. Respondent, anticipating a need for additional capacity in the region, proposed to increase the capacity at the Ivy Hill Substation. In order to do so, respondent was required to apply for a special exception to operate an enlarged facility. Respondent applied for and obtained a special exception. In their petition for certiorari, petitioners did not challenge the granting of the special exception. Accordingly, the granting of the special exception is no longer at issue.

The new, enlarged substation was planned to extend onto a contiguous parcel from the original site of the existing substation. The original substation was situated on a 0.4 acre parcel. Subsequently, respondents acquired an adjacent 1.5 acre parcel and, during the proceedings at the administrative level, acquired another 0.9 acre adjoining parcel. The record reflects that all three parcels are contiguous with each other. Petitioners assert in their brief that because the parcels never were "legally combined," the Baltimore County ordinance required respondent to obtain a variance to use the three parcels as one parcel. Respondent asserts that it since has caused the three lots to be combined by a resubdivision. Petitioner alleges that this was done improperly. If, in fact, it was done improperly, that is a matter for another day.[4] We are concerned here only with the applicability of the zoning

---

4. We often have held that subdivision is not zoning. In most jurisdictions, including Baltimore County, subdivision regulations are enacted and codified separately. We did state in our recent case of *Wesley Chapel Bluemount Ass'n v. Baltimore County*, 347 Md. 125, 699 A.2d 434 (1997), that planning and subdivision matters were in the nature of zoning for the purposes of the State Open Meetings Act. That opinion was based on our perception that the Legislature intended planning and subdivision processes to be considered as zoning *under that Act. See generally id.* Our opinion on that matter in that case was meant to apply only to Open Meetings Act concerns, and was not meant to be of general application changing, as Judge Eldridge discussed in his dissent, the holdings of "numerous opinions of this Court which have drawn a sharp distinction between 'planning' and 'zoning.' The approval or disapproval of a development plan is simply not a 'zoning matter.'" *Id.* at 151, 699 A.2d at 447. The holding in *Wesley Chapel* is limited to the context of the Open Meetings Act.

ordinance's variance provisions and not Baltimore County subdivision regulations.

## RESOLUTION

We again note that in this case we are concerned only with the issue of the variance. The primary concern of the Board, however, was the simultaneously considered special exception request. The grant of that special exception is not before us. The Board originally found that the variance provisions, section 307.1, did not apply to respondent's request. The Board, for reasons we shall discuss, was correct in that finding.[5] Nonetheless, apparently assuming it was required to address the variance issue because respondent filed a petition requesting a variance, the Board granted the petition. Because no variance was required, we direct the Court of Special Appeals to remand this matter to the circuit court for it to remand to the Board. The Board shall render a finding, consistent with its initial finding, that no variance is required for respondent to utilize the entire parcel for its proposal, so long as setback requirements are met from the exterior property lines of respondent's combined parcel.

## DISCUSSION

■ Zoning ordinances, including Baltimore County's ordinances, **do not create lots.** Zoning does not create parcels of

---

5. The Board discussed the variance request, stating, in relevant part:
> [Respondent] finally must meet the tests under Section 307.1 in pursuing variance from lot line setbacks, said lot lines existing between tracts owned by [respondent]. George Gavrelis clearly points out in his testimony that Section 306 of the BCZR speaks to lot area regulations for erecting substations. [Respondent] seeks a variance under 307.1 from BCZR 1A04.3B.3 which requires a 50-foot setback from any lot line other than a street line. *The Board finds as a fact that Section 306 applies in this case and that the application for a variance under 307.1 may be treated as moot.* [Respondent] recognizes that its placement of electric utility structures on the subject site, straddling interior lot lines and certainly within *otherwise* required setbacks, *may be construed* under 1A04.3B.3 as a principal building, and is therefore requesting such variance. The Board is *compelled* to address the issue of 307.1 pursuant to the Petition. [Emphasis added.]

real property. What zoning ordinances normally do, with respect to residential districts, is establish dimensional minimums, such as minimal lot, parcel or tract size, yard sizes (the distance between buildings and property lines), and the height of structures. In addition, such ordinances specify the number of residential units that may be placed upon the area of a tract or parcel (density), ancillary requirements such as parking minimums, bathroom minimums, and square footage minimums of buildings. Additionally, zoning ordinances can, to some extent, regulate uses of property, as distinct from dimensional requirements.[6]

Baltimore County's ordinance, like most zoning ordinances, does not define lots to include only lots delineated on plats in approved subdivisions. Section 101 defines "corner lot," "lot depth," "through lot" and then defines "interior lot" simply as "[a] lot other than a corner or through lot." It generically defines "lot of record," as "[a] *parcel of land* with boundaries

---

**6.** When variance issues are involved, some cases regarding setbacks or height restrictions refer to them as "dimensional" variances, *see Bressman v. Gash*, 131 N.J. 517, 523–26, 621 A.2d 476, 479–81 (1993), and some as "deviational" variances. *See Sako v. Delsesto*, 688 A.2d 1296, 1298 (R.I.1997). In Maryland, they are commonly referred to as "yard" variances, distinguishing them from "use" variances, but on occasion have been referred to as "dimensional" variances. *See Easter v. Mayor of Baltimore*, 195 Md. 395, 401, 73 A.2d 491, 493 (1950) ("Use variances are doubtless more serious than dimensional changes, but that is only a matter of degree."). The proof required, however, assuming the uniqueness of a subject property, can be much greater with respect to use variances when the terms "practical difficulties" and "unwarranted [undue, unusual or unreasonable] hardship" are framed in the disjunctive, "practical difficulties *or* unwarranted hardship." We noted in *Zengerle v. Board of County Commissioners*, 262 Md. 1, 21, 276 A.2d 646, 656 (1971): "a use variance is customarily concerned with unusual [unwarranted] hardship where the land cannot yield a reasonable return without a variance whereas an area variance is *primarily concerned with practical difficulties.*" Although the phrase "reasonable return" has all but disappeared from the vocabulary of zoning, except to the extent the term "reasonable investment backed expectations," has crept into "takings" jurisprudence, *see Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) and *its* progeny, the distinction between yard and use variances consistently has been applied through the selective application of the practical difficulty/unwarranted hardship terminology.

as recorded in the land records of Baltimore County on the same date as the effective date of the zoning regulation which governs the use, subdivision or other condition thereof." *Id.* (emphasis added). The term "lots" as used in ordinances generally means parcels or tracts of land. In other words, when setbacks in respective districts are established, they generally apply to all tracts, parcels or pieces of land within the district, as indicated in the Baltimore County ordinance's definition of "setback." *See id.*

Generally, and in Baltimore County, the title or purpose clauses of zoning ordinances express concern with undersized parcels or lots, not with parcels that exceed the minimum dimensional requirements of the ordinances. The ordinance at issue here, in section 1A04.1(A)(1), which deals with Resource Conservation Zones (in the case *sub judice,* an "R.C.5" (Rural–Residential Zone)), states in its "legislative findings" clause:

It is found that:

. . . .

c. In some cases *lot sizes are inadequate* to assure long-term adequacy of on-lot sewer and water systems;

d. That unless measures are implemented to assure more rational growth patterns, *including adequate lot size,* undue financial hardships will be placed on Baltimore County and the life, safety and general welfare of the citizens of the county will be adversely affected. [Emphasis added.]

The "purpose" clause provides, in relevant part:

B. Purpose. The R.C.5 zoning classification is established, pursuant to the legislative findings above, in order to:

. . . .

4. *Provide a minimum lot size* which is sufficient to provide adequate area for the proper functioning of on-

lot sewer and water systems.[7]

*Id.* (emphasis added).

 Efforts throughout the country, including Baltimore County, have been to restrict undersize parcels, not oversized parcels. These efforts have resulted in the creation and evolution in zoning of the doctrine of merger, which, in zoning cases, generally prohibits the use of individual substandard parcels if contiguous parcels have been, at any relevant time, in the same ownership and at the time of that ownership, the combined parcel was not substandard.[8] In other words, if several contiguous parcels, each of which do not comply with present zoning, are in single ownership and, as combined, the single parcel is usable without violating zoning provisions, one of the separate, nonconforming parcels may not then *or thereafter* be considered nonconforming, nor may a variance be granted for that separate parcel. Some cases discuss automatic merger, but most require that the intent of the owner to merge the parcels be expressed, though little evidence of that intent is required. As far as we can discern, the zoning doctrine of lot merger has never been applied in any jurisdiction to limit the creation of parcels that exceed minimum dimensional requirements; merger has been applied only to prohibit the later creation of undersized parcels. This, perhaps, is due to the general lack of objection to large parcels.[9] A discussion, however, of how the doctrine of merger applies conversely to the present case may help emphasize that, in the context described above, merger occurs without the need for official subdivision or conveyancing. It is accepted automati-

---

**7.** We will address the combining of three smaller parcels into one larger parcel by respondent, *infra.* That the purpose of this section is to require adequately sized lots or parcels of land will prove especially relevant in that context.

**8.** We are unaware of any Maryland cases adopting the zoning doctrine of merger.

**9.** There are social concerns that raising minimum parcel or lot size or raising minimum square footage requirements can result in exclusionary zoning that may, in some circumstances, be invalid. Exclusionary zoning issues have not been raised in the case at bar.

cally in some jurisdictions or, most often, with minimum proof of the owner's intent in other jurisdictions and always without the necessity of official action. We see no reason why a doctrine that seeks to prevent the proliferation or use of nonconforming, undersized lots by holding that they have been combined or merged into a larger parcel should not, as far as zoning is concerned, be applied properly to permit the creation, through the combining by use of a larger parcel from already conforming smaller parcels, without the necessity of official action or conveyancing.

One of the seminal cases discussing the doctrine of merger with respect to zoning is the New Jersey case of *Loechner v. Campoli*, 49 N.J. 504, 231 A.2d 553 (1967). In 1936, Mrs. Loechner and her late husband acquired lots numbered 186 through 188 on a surveyor's map or plat. Each lot was twenty-five feet wide by one hundred feet in depth. Prior to 1952, the Loechners erected a single house on the three lots. In 1952, Rudolph Loechner acquired two adjoining lots, numbered 189 and 190. These new lots remained vacant. When Rudolph Loechner died, he devised lots 189 and 190 to his wife. Accordingly, upon his death, his wife owned all five lots, 186 through 190, and the house that had been erected on lots 186, 187, and 188.

Mrs. Loechner subsequently contracted to sell lots 189 and 190 to Anthony Villani. Villani applied for a variance to build on his two lots, neglecting to mention that he had purchased the lots from an owner who had owned all five lots at one time. Although he obtained a variance, he was denied a building permit on grounds that subdivision approval was required because the five lots, when in common ownership, had merged into one parcel and the subsequent off-conveyance of the two lots to Villani was, in fact, a resubdivision of more parcels from a lesser number of parcels (one tract composed of the five lots). Mrs. Loechner took the position that resubdivison was unnecessary because all five lots were shown on the map or plat when she and her husband acquired the lots.

The Supreme Court of New Jersey noted that "[t]he acquisition of title by plaintiff to Lots 189 and 190 which were

contiguous to Lots 186–188 created one parcel or tract of land consisting of five separate lots." *Id.* at 508, 231 A.2d at 555. Explaining that a state statute defined subdivision as "division of a lot, tract, or parcel of land into two or more lots," *id.* at 509, 231 A.2d at 555, the court discussed the meaning of the word "lot" in that context, noting that it retained its traditional meaning as a parcel or tract of land:

> The word "lot" as used in the Subdivision Act must be read in context with the words "tract or parcel of land" in order to ascertain its meaning. Consistent with recognized principles of statutory construction "lot" takes its meaning from the other two words with which it is associated. *Martell v. Lane,* 22 N.J. 110, 123 A.2d 541 (1956); *Salz v. State House Commission,* 18 N.J. 106, 112 A.2d 716 (1955); *State v. Murzda,* 116 N.J.L. 219, 183 A. 305 (E. & A.1936); 2 *Sutherland, Statutory Construction* § 4908 (3d ed. 1443). Thus considered "lot" is synonymous with "tract or parcel." The phrase "lot, tract or parcel of land" has traditionally been used to connote any portion or piece of realty. N.J.S.A. 40:55—1.2 contemplates supervision of the division of a large tract or parcel of land into two or more smaller tracts or parcels. The Subdivision Act is not concerned with the manner in which land is described for conveyancing purposes but rather with what use is made thereof.

*Id.* at 510–11, 231 A.2d at 556–57.

Much the same can be said for zoning. Zoning is concerned with dimensions and uses of land or structures, not with any particular description "lot," "parcel," or "tract" applicable to or necessary for conveyancing. Conveyancing is a separate area of law involving the transfer of property between buyers and sellers that generally is not directly connected with government regulations and restrictions on the use of property through the zoning power. In zoning, the term lot normally is generic and used interchangeably to describe parcels, tracts, pieces or sections of land.[10]

---

10. In an earlier case, *Hutzler v. Mayor of Baltimore,* 207 Md. 424, 429, 114 A.2d 608, 611 (1955), which involved a parcel of land 200 feet by

After *Loechner*, the doctrine of merger continued to evolve. It was described more concisely in *Somol v. Board of Adjustment*, 277 N.J.Super. 220, 228, 649 A.2d 422, 426 (1994): "[S]eparate *undersized* but contiguous lots fronting on the same street in single ownership ordinarily merge into one lot and conveyance of a portion will require subdivision and variance approval." (Emphasis added.) As is evident, the doctrine is designed to limit the creation of undersized parcels by *presuming* that merger can occur when contiguous lots exist in common ownership. As we have indicated, some jurisdictions presume merger automatically; in most jurisdictions, however, there must be some evidence of the owner's intent to merge. In the present case, respondent asserts a right to combine the contiguous parcels and to use them as a single parcel. Therefore, to the extent the doctrine is held to apply in this State under these converse circumstances, the existence of merger is admitted in the case *sub judice*.

In *Iannucci v. Zoning Board of Appeals*, 25 Conn.App. 85, 592 A.2d 970 (1991), the applicant submitted a variance application to reposition a house entirely on one lot. At the time of the application, the house was built on two lots, with the attached porch on one lot and the main body of the house on the other. The purpose of the variance was to allow the property owner to build a new house on the vacated lot. The zoning body denied the variance, finding that " 'when a portion of the dwelling on lot two was constructed over the property line, lots one and two were effectively combined.' " *Id.* at 87, 592 A.2d at 971. The Connecticut Appellate Court held:

Contiguous land owned by the same person does not necessarily constitute a single lot. A merger can occur,

---

380 feet, we noted that the statute at issue defined a "lot as '... a parcel of land now or hereafter laid out and occupied by one building and the accessory buildings or uses customarily or necessarily incident to it, including such open spaces as are required by this ordinance.' " (Omission in original.) In *Hertelendy v. Montgomery County Bd. of Appeals*, 245 Md. 554, 568–69, 226 A.2d 672, 681 (1967), we noted, without comment, that an ordinance's variance provisions addressed "parcels of property" and then, without making any distinction, described the parcel of property as "Lot 23–B."

however, if the owner of contiguous parcels of land intends to form one tract. The owner's intent "may be inferred from his conduct with respect to the land and the use which he makes of it." Intent is an inference of fact and "is not reviewable unless it was one which the trier could not reasonably make."

... [B]oth lots were purchased by the plaintiff's parents. A portion of the dwelling was later constructed over the property line.... It was reasonable for the [administrative agency] to infer that the actions of the plaintiff's parents effectively merged the lots. Once these lots were merged, they could not thereafter be redivided into two separate lots [without complying with the subdivision process].

The plaintiff's assertion that the lots remain separate because they appear separately on the original subdivision plan is not persuasive. A reference to multiple lots "from a map filed in the land records does not compel a finding of an absence of merger.... Such a conclusion conflicts with the basic proposition that in a determination of the factual issue of merger, the intent of the property owners must be ascertained and that no single factor is dispositive."

*Id.* at 89–90, 592 A.2d at 972–73 (citations omitted) (some quotations marks omitted). In *Appeal of Gregor*, 156 Pa. Commw. 418, 423–24, 627 A.2d 308, 310–11 (1993), the Pennsylvania Commonwealth Court said:

Under the doctrine of merger of estate[s] in land, a lesser estate is merged into a greater estate whenever both estates meet in the same person. This doctrine has no application, however, to zoning law and the construction of a zoning ordinance where, as here, the term "merger" is used to describe the effect of a zoning ordinance on lots held in common ownership and is related to the issue of the physical merger of adjoining lots....

... The burden is placed upon the party who asserts a physical merger to establish the landowner's intent to integrate the adjoining lots into one large parcel. [Citations omitted.]

*See also Skelley v. Zoning Bd. of Review,* 569 A.2d 1054, 1056
(R.I.1990) ("The concept of merger of contiguous nonconform-
ing lots in common ownership as an appropriate method to
combine nonconforming lots is gaining increased recogni-
tion.").

We shall hold that a landowner who clearly desires
to combine or merge several parcels or lots of land into one
larger parcel may do so. One way he or she may do so is to
integrate or utilize the contiguous lots in the service of a
single structure or project, as respondent proposes in the
instant case.[11] Although this is not the general application of
the doctrine of merger as it relates to zoning, we perceive no
rational objection to applying the same principles to the
circumstances of this case, resulting in a larger parcel. For
title purposes, the platted lot lines may remain, but by opera-
tion of law a single parcel emerges for zoning purposes. At
least three of our sister jurisdictions appear to have moved in
the same direction. For example, the New Jersey Superior
Court in *Bridge v. Neptune Township Zoning Board,* 233
N.J.Super. 587, 592–93, 595, 559 A.2d 855, 858, 859 (1989),
discussed merger where a house had been constructed so it
extended across the property lines of two parcels in common
ownership:

> The pivotal question is whether lot 686 retained its identi-
> ty as a separate and distinct parcel for land use regulation
> purposes. Integral to that issue is the distinction, for land
> subdivision regulation purposes, between (1) the assembling
> in common ownership of two contiguous non-conforming lots
> both of which front on existing streets where the owner
> constructs a single-family residential dwelling so as to cover

---

11. An owner of contiguous parcels who erects a structure in what
would ordinarily be a setback of one of the individual parcels might,
under this doctrine, although we do not now decide it, also cause a
combination of lots thus restricting the future alienability of the unbuilt
upon parcel because the conveyance of that parcel would cause the
property upon which the structure is built to be in violation of the
ordinance. Such an owner would also risk being forced to bring that
parcel into conformity by removing the structure from the setback.

all or part of both lots, and (2) such similarly assembled lots where one or both of the lots remains entirely vacant. In the latter instance, the lots *may* retain their identity, but in the former instance, the lots lose their identity and merge into a single parcel.

. . . .

When a person acquires ownership of contiguous non-conforming lots that are delineated as separate tracts on any map, and then builds a single-family structure so that it overlaps both lots, the lots merge into a single tract and are subject to the [Municipal Land Use Law] and its restrictions for future subdivision purposes as long as the structure remains on any part of both lots. Lot 686 cannot recover its separate identity so long as a portion of the house remains where it is. . . .

In *Molic v. Zoning Board of Appeals,* 18 Conn.App. 159, 163–65, 556 A.2d 1049, 1051–52 (1989), which did not involve the zoning doctrine of merger, the court, upholding an agency's finding that no merger had occurred where a swimming pool had been constructed across two parcels of land, nonetheless stated:

The plaintiffs claimed that all of the property . . . had been merged by use and intent into one parcel, and that the 1984 map that showed three lots was an unapproved subdivision. . . .

An owner of contiguous parcels of land *may merge those parcels to form one tract if he desires to do so.* An intent on the part of the owner to do so may be inferred from his conduct with respect to the land and the use which he makes of it. . . . Intent is a question of fact.

The plaintiffs have cited no authority . . . for the proposition that an owner *must* be deemed to have merged contiguous lots. The one exception we have found . . . is that . . . some zoning regulations . . . may require, either expressly or implicitly, that under certain conditions a nonconforming lot merges with contiguous land owned by the same owner [the zoning concept of the doctrine of merger]. This is an

understandable requirement because it furthers the general zoning purpose of eliminating nonconforming lots. . . .

. . . .

. . . Contiguous land all owned by the same person does not *necessarily* constitute a single lot. [Emphasis added.] [Citations omitted.] [Footnote omitted.]

Although *Molic* describes the general merger of parcels as being fact-based by not recognizing automatic merger, it appears to accept that the owner may combine contiguous tracts if he or she intends to do so.

The Pennsylvania Commonwealth Court, although addressing the doctrine of merger in a case involving zoning nonconformity, stated, without objection to the construction of structures across parcel boundaries, that:

This is not to say, however, that once two adjoining lots are shown to be in "single and separate ownership" at the time of the relevant zoning ordinance, these lots must *always* be developed as two separate parcels. For example, a landowner who has acquired two adjoining lots after the passage of a zoning ordinance which rendered one or both of the lots undersized may *use* both lots in such a manner so as to integrate both lots into one large tract (explicitly demonstrated by building a house which straddles the common border).

*Township of Middletown v. Middletown Township Zoning Hearing Bd.,* 120 Pa. Commw. 238, 245, 548 A.2d 1297, 1300 (1988).

We are especially cognizant that in those jurisdictions that have expressly or impliedly recognized the doctrine of merger in zoning cases, none has required a formal re-subdivision as an element of merger. In fact, they generally reject both attempts to resubdivide into substandard parcels after a merger into a larger parcel has occurred and attempts to obtain variances from the nonconformity of the original parcels after a merger has created a larger conforming parcel. In those cases in which the erection of structures across borders have raised merger issues, none of the cases we have examined

ever question the right of property owners of multiple contiguous parcels to treat them as one parcel. These courts generally assume that it is permissible and not in violation of zoning principles.

Moreover, the construction of structures extending over more than one parcel or lot would not, in our view, affect the boundary lines (or lot lines) of the two parcels. They remain in place until a deed of conveyance or a new subdivision (generally defined as the creation of more parcels from fewer parcels) is created.[12] Perhaps even more important is the implication of the definition of "setback" contained in Baltimore County Zoning Regulations, section 101:

> The required minimum horizontal distance between the building line (as defined in Section 101) and the related front, side or rear *property line*. [Emphasis added.]

Building line is defined as "[t]he line established by law beyond which a building shall not extend." *Id.* When the ordinance refers to "lot" lines with respect to setbacks, it

---

**12.** The Baltimore County Zoning Regulations in its general definitions section defines subdivision as:

> The division of any tract or parcel of land, including frontage along an existing street or highway, into two or more lots, plots or other divisions of land *for the purpose, whether immediate or future, of building development for rental or sale,* and including all changes in street or lot [parcel, tract] lines; provided, however, that this definition of a subdivision shall not include divisions of land for agricultural purposes. [Emphasis added.]

The Baltimore County *Planning, Zoning and Subdivision Control* statute, in Article I, Section 26–1 defines subdivision as:

> *Subdivision* means the division of a lot, tract, or parcel of land into two (2) or more lots, sites, or other divisions of land for the purpose, whether immediate or future, of sale or building development.... Subdivision also includes resubdivision and, where appropriate to the context, relates to the process and subdividing or to the lands or territory divided.

Clearly, respondent was combining, not dividing, parcels and not combining them for purposes of rental or sale. It was not creating more parcels from less parcels, at least until pressured to seek subdivision, an issue not before us, or was it seeking to make any "dimensional" changes, or to change parcel or "lot" lines. Nor has it changed the boundaries of its total parcel. As we have said, unless otherwise indicated, "lot" as used in zoning or subdivision definition is the equivalent of "parcel" or "tract."

refers to lot lines generically, *i.e.,* property lines. The ordinance's setback provisions are met when the various "yard" requirements exist between buildings and property lines.

■ There is no claim that any structures in the case at bar extend, or will extend, into any required "yards" or setbacks from the exterior property lines of the entire parcel now owned by respondent. It thus does not need a variance. As a result, we remand to the Court of Special Appeals and order it to remand this case to the trial court so it may return this matter to the Baltimore County Board of Appeals with instructions to render a finding, consistent with its initial finding, that no setback variance from "interior lot lines" is required in the case *sub judice.* The appropriate method created by Baltimore County to address the enlargement of this substation was by way of the special exception provisions. As we have noted, the grant of the special exception was not presented as a question in the certiorari petition.

Respondent, insofar as the variance issues raised in this appeal are concerned, is entitled by right to construct the enlargement of the Ivy Hill Substation on its entire parcel without regard to the original "lot lines" that initially separated the three individual parcels, which now make up the larger combined parcel.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART; THAT PORTION OF THE COURT OF SPECIAL APPEALS' JUDGMENT RELATING TO THE VARIANCE IS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THAT PORTION OF THE JUDGMENT OF THE CIRCUIT COURT RELATING TO THE VARIANCE AND REMAND THE CASE TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE BOARD OF APPEALS FOR A DECISION CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**