233 N.J. Super. 587 (1989)
559 A.2d 855
FRANK H. BRIDGE, PLAINTIFF-RESPONDENT,
v.
NEPTUNE TOWNSHIP ZONING BOARD OF ADJUSTMENT; NEPTUNE TOWNSHIP; VITO GADALETA, ZONING OFFICER; FRANK SAUTA, DEPUTY CONSTRUCTION OFFICIAL; JOHN PRICE, CONSTRUCTION OFFICIAL, DEFENDANTS-RESPONDENTS, AND DONALD S. SUTHERLAND AND PHYLLIS B. SUTHERLAND, INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1989.
Decided June 9, 1989.
*589 Before Judges LONG, MUIR, Jr. and KEEFE.
Philip B. Vinick argued the cause for appellants (Cohn & Lifland, attorneys; Philip B. Vinick, on the brief).
Dennis M. Crawford argued the cause for respondent Bridge (Crawford & Hirsch, attorneys; Dennis M. Crawford, on the brief).
Robert D. Faccone argued the cause for respondents Neptune Township, Gadaleta, Sauta and Price (Carton & Faccone, attorneys; Robert D. Faccone, on the letter brief).
James A. Carey, attorney for respondent Board of Adjustment, filed a letter stating it would not participate in the appeal.
The opinion of the court was delivered by MUIR, Jr., J.A.D.
We reverse the judgment of the trial court in this zoning case for a reason fundamental to land use regulation, the lack of jurisdiction of a zoning board of adjustment to consider a variance application under N.J.S.A. 40:55D-70c where a subdivision is also required. The individual parties to this appeal, as did the defendant zoning board of adjustment (defendant board) and the trial court, approached this case solely in the context of an undersized, isolated vacant lot in a residential zone, which, due to the minimum criteria of the local zoning ordinance, required N.J.S.A. 40:55D-70c-type variances to permit construction of a single-family dwelling. The issues originally presented on appeal, and as considered by both the board and the trial court, fell essentially within the spectrum of traditional isolated lot cases. See Harrington Glen, Inc. v. Leonia Bd. of Adj., 52 N.J. 22 (1968); Gougeon v. Stone Harbor, et al., 52 *590 N.J. 212 (1968); Gougeon v. Bd. of Adj. of Stone Harbor, 54 N.J. 138 (1969); Commons v. Westwood Board of Adjustment, 81 N.J. 597 (1980); Nash v. Board of Adjustment of Morris Tp., 96 N.J. 97 (1984); Davis Enterprises v. Karpf, 105 N.J. 476 (1987). The issues as presented, however, overlooked the fact that neither plaintiff nor his predecessor in title secured a required subdivision.[1]
The facts are essentially without dispute. Ocean Grove is a section of Neptune Township that is laid out in accordance with a map made by the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church, which map is referred to as a "Map of Lots of Camp Ground of the said Camp Meeting Association."[2] Two of the lots shown on the map are involved here. One lot is 687, which fronts on Embury Avenue. The other lot is 686, which fronts on Webb Avenue. Both lots share the same rear lot line. They are identical in area and dimension. Both are substandard in area and depth under the Neptune Township zoning ordinance. They are 452 square feet less than the ordinance-required minimum area. They are approximately 15 feet short of the ordinance-required minimum depth.
In May 1986, William and Dorothy Green (Green) owned both lots. At that time, a residential dwelling commonly known as 12 Embury Avenue covered almost all of lot 687 and a portion *591 of lot 686. The house extended a little more than seven feet onto lot 686. Green contracted to sell the house and lots to plaintiff for $150,000. The contract of sale called for a $35,000 purchase money mortgage on the vacant portion of lot 686. The contract obligated plaintiff to "be responsible for obtaining any certificates of occupancy or similar type municipal requirements." Without securing subdivision approval, Green apparently conveyed the property by two deeds.[3] One deed covered the southerly portion of lot 686. The metes and bounds description attached, and a subsequent survey, show that Green conveyed the vacant portion of lot 686 by that deed. The deed attempted to create a separate lot with sidelines of 34 and 36 feet or, respectively, about 10 feet and 9 feet short of the filed map lot (686) dimensions. Thus, it sought to create a lot more substandard under the local zoning ordinance than lot 686 would have been if it were entirely vacant.
In August 1986, before plaintiff took title to the Green property, the township zoning officer wrote a letter to Green indicating that Green, as the owner of lot 686, had the right, under a grandfather clause in the township zoning ordinance, to construct a single-family dwelling. It is not clear from the record what induced the letter. It is clear the zoning ordinance had no grandfather clause. However, the building official later authorized issuance of a building permit to plaintiff to construct a single family dwelling on lot 686. There is nothing in the record to suggest plaintiff advised township officials of the scope of the two deed conveyances Green subsequently made in late August. Thereafter, amid a series of convoluted events irrelevant to this opinion, plaintiff proceeded to construct a single family dwelling on the vacant portion of lot 686.
When the intervenors learned of the construction, they sought and secured a temporary injunction pending resolution *592 of plaintiff's variance application to defendant Board of Adjustment. Thereafter, plaintiff filed an application for a variance. Annexed to the application or as part of his proof before the defendant board, plaintiff presented a survey of lot 686 which showed the partially constructed dwelling (the one for which variance was sought) covering approximately 31 feet of the depth of the vacant portion of lot 686 and 24 feet of its width. The survey also showed that the house facing Embury Avenue encroached approximately seven feet onto lot 686. The survey further showed five feet of that encroachment as "removed or being removed." In an effort to return lot 686 to a separate distinct lot, plaintiff gave a six-foot written easement on lot 686 enuring to the benefit of himself as owner of the house and lot 687 for that portion of the house from lot 687 that continued to infringe on lot 686. The defendant board considered plaintiff's variance application, taking no notice of the easement or the infringement on lot 686 of the Embury Avenue house reflected in the survey.
The board denied plaintiff's application under both subsections c(1) and c(2) of N.J.S.A. 40:55D-70. The trial judge sustained the denial under c(1), but found the c(2) denial an abuse of discretion, leading to this appeal by the intervenors.[4]

I.
The pivotal question is whether lot 686 retained its identity as a separate and distinct parcel for land use regulation purposes. Integral to that issue is the distinction, for land subdivision regulation purposes, between (1) the assembling in *593 common ownership of two contiguous non-conforming lots both of which front on existing streets where the owner constructs a single-family residential dwelling so as to cover all or part of both lots, and (2) such similarly assembled lots where one or both of the lots remains entirely vacant. In the latter instance, the lots may retain their identity, but in the former instance, the lots lose their identity and merge into a single parcel.
The Municipal Land Use Law (MLUL) defines subdivision as
the division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development. The following shall not be considered subdivisions within the meaning of this act, if no new streets are created: (1) divisions of land found by the planning board or subdivision committee thereof appointed by the chairman to be for agricultural purposes where all resulting parcels are 5 acres or larger in size, (2) divisions of property by testamentary or intestate provisions, (3) divisions of property upon court order including but not limited to judgments of foreclosure, (4) consolidation of existing lots by deed or other recorded instrument and (5) the conveyance of one or more adjoining lots, tracts or parcels of land, owned by the same person or persons and all of which are found and certified by the administrative officer to conform to the requirements of the municipal development regulations and are shown and designated as separate lots, tracts or parcels on the tax map or atlas of the municipality. The term "subdivision" shall also include the term "resubdivision." [N.J.S.A. 40:55D-7.]
The Neptune Township Ordinance defines subdivision as:
The division of a lot, tract or parcel of land into two or more lots, sites or other divisions of land for the purpose, whether immediate or future, of sale or building development; except that the following divisions shall not be considered subdivisions provided, however, that no new streets or roads are involved; divisions of land for agricultural purposes where the resulting parcels are three acres or larger in size, divisions of property by testamentary or intestate provisions, or divisions of property upon court order. Subdivision also includes re-subdivision, the combining of two or more lots to create a single parcel, and where appropriate to the context, relates to the process of sub-dividing or to the lands or territory divided. [Neptune Twp.Ord. No. 615, Art. IV(1).]
The MLUL and Neptune Township Ordinance make all parcels of land in Ocean Grove, be they made up of contiguous non-conforming lots delineated on a map or not, subject to their provisions. See Loechner v. Campoli, 49 N.J. 504, 511 (1967), (citing Ardolino v. Borough of Florham Park Board of Adjustment, 24 N.J. 94 at 103 (1957)).
*594 In 1967, the Supreme Court, in Loechner, held that contiguous non-conforming vacant lots, assembled under common ownership, lose their individual identity and become a single parcel. Id. 49 N.J. at 509-512. In so holding, the Court concluded that any reduction in the size of such a parcel of land into two or more smaller parcels was a subdivision under the Planning Act of 1953, N.J.S.A. 40:55-1 et seq., and subject to its terms. Id. at 511. The latter Act has since been repealed and replaced by the MLUL which does not vary from the Act in its general regulatory purpose nor in its definition of subdivision as applicable here. See N.J.S.A. 40:55-1.2 (repealed); see also Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 433 (1958).
The loss of identity of the assembled contiguous non-conforming lots or doctrine of merger, as the principle became known, experienced no change under the MLUL. See N.J.S.A. 40:55D-7; Cox, New Jersey Zoning and Land Use Administration, § 12-2.4, at 161 (1988). However, in Chirichello v. Zoning Board of Adj. Monmouth Beach, 78 N.J. 544 (1979), the Supreme Court created a potential exception. The facts of Chirichello arose in the context of a substandard isolated lot variance under N.J.S.A. 40:55D-70c. There, the plaintiff at one time owned three adjoining vacant lots. Two of the lots, 10 and 11, fronted on one existing street while the third, lot 8, partially adjoined the rear line of lot 10 and fronted on another existing street. Sometime after selling lots 10 and 11 to her son, without receiving a subdivision, plaintiff sought a variance to construct a single-family home on lot 8. The Court reasoned that under the circumstances lot 8 had not merged with lots 10 and 11 so that it could not
be said that the sale of the two rear lots [10 and 11] resulted in such a self-created condition that the landowner was disabled per se from an entitlement to a variance. [Id. at 553].
That statement contained a footnote which suggested Loechner be compared with 2 Rathkopf, The Law of Zoning and Planning, § 32.01(2) at 32-16 (4th ed. 1978) where the author stated *595 the doctrine of merger did not apply to back-to-back lots each fronting on existing streets. The Court then went on to state that in Loechner "we suggested that planning board approval of a subdivision be sought before the variance application be processed," Chirichello v. Zoning Board of Adj. Monmouth Beach, supra, 78 N.J. at 554, thus giving recognition to Loechner's continued viability. See also Cox, supra, § 12-2.4 at 161.
In contrast to Loechner and Chirichello, we are not dealing with circumstances where either or both of the contiguous non-conforming lots remained vacant while under common ownership. Here, Green or a predecessor owner constructed the single-family dwelling that fronted on Embury Avenue so that it covered all of lot 687 and a portion of lot 686. That action invoked the merger doctrine of Loechner but precluded the exception of Chirichello.
When a person acquires ownership of contiguous non-conforming lots that are delineated as separate tracts on any map, and then builds a single-family structure so that it overlaps both lots, the lots merge into a single tract and are subject to the MLUL and its restrictions for future subdivision purposes as long as the structure remains on any part of both lots. Lot 686 cannot recover its separate identity so long as a portion of the house remains where it is. Plaintiff's effort to reconstitute it by way of an easement is nothing more than an improper effort to obviate land subdivision regulations.
Moreover, Green's separate conveyances of a portion of lot 686 and the remainder of lot 686 with lot 687 contravened land subdivision regulations. Normally conveyances contravening subdivision laws can be rescinded by timely action of the municipality under N.J.S.A. 40:55D-55. However, where, as here, the illegal conveyances were to the same person, the effect is to reconstitute the merger that occurred when the predecessor owner constructed the house on both lots.
*596 The fact that lot 686 merged with lot 687 precluded defendant board from considering plaintiff's variance application. The only viable basis for considering a variance would have been if the part of lot 686 upon which plaintiff partially constructed the new residential structure had been legally subdivided from the remaining portion of plaintiff's lands containing the house. The MLUL gives jurisdiction to grant a joint subdivision and N.J.S.A. 40:55D-70c-type-variance only to the local planning board. N.J.S.A. 40:55D-60a; see also Cox, supra, § 12-2.3 at 159.[5] The zoning board of adjustment has no similar ancillary jurisdiction. See N.J.S.A. 40:55D-76.[6] Consequently, defendant board had no jurisdiction to consider plaintiff's application and it could only have been considered by the
*597 Township Planning Board in concert with a subdivision application.

II.
We turn now to plaintiff's alternative claim that defendant Neptune Township is estopped from revoking the building permits issued.
There is a carefully prescribed dichotomy between instances where equitable estoppel may and may not be applied against a municipality. The dichotomy is between an act which is utterly beyond the jurisdiction of the municipality and an act which involves an irregular exercise of a basic power possessed by the municipality. The former is ultra vires in the primary sense and void, but the latter is ultra vires only in a secondary sense, which would not preclude application of the doctrine of estoppel in the interest of equity and essential justice. Gruber v. Mayor and Tp. Com. of Raritan Tp., 39 N.J. 1, 15 (1962); Summer Cottagers' Ass'n. of Cape May v. City of Cape May, 19 N.J. 493 (1955).
While we conclude an ultra vires act in a secondary sense is implicated here, the issue has to be first addressed to the trial judge. Resolution of the issue involves a sensitive balancing of the facts based on the interests of equity and essential justice. See Gruber v. Mayor & Tp. Com. of Raritan Tp., supra, 39 N.J. at 15. It also entails credibility assessments. See Trusky v. Ford Motor Co., 19 N.J. Super. 100 (App.Div. 1952). Such determinations must begin with the trial judge in a plenary hearing where all the events surrounding the conduct of Green, the conduct of plaintiff and representations made by either or both to municipal officials can be explored along with the actions of those officials.
Finally, in light of our ruling the board of adjustment lacked jurisdiction, we find to be without merit plaintiff's contention that he is entitled to a favorable disposition of the variance *598 issue under the provisions of N.J.S.A. 40:55D-73. R. 2:11-3(e)(1)(E).
Consequently, we reverse and remand to the trial court for further action consonant with this opinion.
NOTES
[1] Subsequent to oral argument, we requested briefs on the subdivision issue.
[2] The Map of the Lots of the Camp Ground of the Camp Meeting Association is not recorded under the Old Map Act, N.J.S.A. 46:23-1 et seq. (repealed), according to the records of the Monmouth County Clerk's Office. The Neptune Tax Maps, however, utilize it for Tax Lot and Block purposes.

Conveyances in Ocean Grove are made with reference to the map. Those conveyances, as initially created by the Camp Meeting Association, involve lease transfers. The Camp Meeting Association, after laying out Ocean Grove in accordance with the map, gave 99-year renewable leases for lots sold. Subsequent transfers were by lease assignment. Those leases and lease assignments are subject to municipal land use regulations in the same manner as fee conveyances.
[3] We say apparently, because we are not provided with both deeds. Only the deed for the southerly portion of lot 686 is included in the record. By strong inference, we conclude the other deed covered lot 687 and a portion of lot 686.
[4] In light of our resolution on other grounds, it becomes unnecessary to rule on the trial court's determination that the defendant Board of Adjustment abused its discretion in not granting an N.J.S.A. 40:55D-70c(2) variance. But see Kaufmann v. Planning Bd. of Warren Tp., 110 N.J. 551 (1988), and, cases cited previously on the traditional isolated lot issue.

Following his determination, the trial judge vacated the temporary injunction, but then stayed his judgment pending appeal.
[5] N.J.S.A. 40:55D-60 provides, in pertinent part,

Whenever the proposed development requires approval pursuant to this act of a subdivision, site plan or conditional use, but not a variance pursuant to subsection d. of section 57 of this act (C. 40:55D-70), the planning board shall have the power to grant to the same extent and subject to the same restrictions as the board of adjustment:
a. Variances pursuant to subsection 57 c. of this act. [N.J.S.A. 40:55D-70c].
[6] N.J.S.A. 40:55D-76b provides:

b. The board of adjustment shall have the power to grant, to the same extent and subject to the same restrictions as the planning board, subdivision or site plan approval pursuant to article 6 of this act or conditional use approval pursuant to section 54 of this act, whenever the proposed development requires approval by the board of adjustment of a variance pursuant to subsection d. of section 57 of this act (N.J.S.A. 40:55D-70). The developer may elect to submit a separate application requesting approval of the variance and a subsequent application for any required approval of a subdivision, site plan or conditional use. The separate approval of the variance shall be conditioned upon grant of all required subsequent approvals by the board of adjustment. No such subsequent approval shall be granted unless such approval can be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zone plan and zoning ordinance. The number of votes of board members required to grant any such subsequent approval shall be as otherwise provided in this act for the approval in question, and the special vote pursuant to the aforesaid subsection d. of section 57 shall not be required.