759 A.2d 901 (2000)
334 N.J. Super. 413
Ken CHICALESE and Karen Chicalese, Plaintiffs,
v.
MONROE TOWNSHIP PLANNING BOARD, Defendant.
Superior Court of New Jersey, Law Division, Middlesex County.
Decided June 30, 2000.
*903 Walter Toto, attorney for Plaintiffs (Law Offices of Thomas R. Farino, Jr., Jamesburg).
Jerome Convery, Old Bridge, attorney for Defendant.
*902 WOLFSON, J.S.C.

I. Introductory Statement

In this action, Plaintiffs Ken and Karen Chicalese ("applicants" or "plaintiffs") seek to overturn the Monroe Township Planning Board's denial of their application for major subdivision approval and ancillary bulk variances for width, frontage and lot area. The novel issue raised by this appeal requires me to determine when, and in which forum, an applicant may challenge the applicability of the doctrine of merger, [see, Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967) (contiguous, undersized lots in common ownership, lose their separate identity, and merge, in order to eliminate the nonconformity) ], a decision which, necessarily, implicates the jurisdictional spheres of both planning and zoning boards.

II. Factual Background

Prior to its acquisition by plaintiffs, the property in question had been identified as Lots 22, 23, 24, 25, 26, 35 and 36 in Block 147.10 on the Tax map of the Township of Monroe. The "Lshaped" property, which in the aggregate comprised approximately 4/10 of an acre, is located in the R-10 (residential) zone, permitting single family *904 development on minimum lot sizes of 10,000 square feet. In their development application, plaintiffs sought permission to subdivide the .40 acre property into a nonconforming lot of 5,000 square feet, requiring bulk variances for width, frontage and lot area, and a conforming lot comprised of 12,500 square feet, on which a single family home presently exists. Because of the property's irregular shape, the existing single family home would front on one street, Ellingham Avenue, while the home intended for the rear of the property, would front on a different street, Cleveland Avenue. An existing in-ground pool and deck presently encroach into the area proposed for the undersized lot.
Public hearings on the application were held over a three month period, from August through November, 1999. Mike Geller, plaintiffs' professional engineer and planner testified that the subject property, when purchased by the applicant in 1989, had, in fact, been comprised of seven, separately identified tax lots which, apparently, had, at some point in time, been unilaterally consolidated into a single lot for the purposes of Township Tax Map. He further testified that Lots 22 through 26, on which the existing home is located, have frontage on Ellingham Avenue, while Lots 35 and 36, front on a different street, Cleveland Avenue, and "have been left unencumbered by improvements, and stand on their own." These circumstances, according to Geller, suggested the absence of an intent to merge Lots 35 and 36 with Lots 22 through 26, and that this was especially so since Lots 22 through 26 already constituted a conforming lot, and because Lots 35 and 36 had not been utilized in conjunction with the existing residence.
Mr. Geller also offered affirmative testimony supporting the grant of the variances necessitated by the proposed undersized lot, opining that both the positive and negative criteria for either a C-1 or C-2 type variance, were satisfied. See N.J.S.A. 40:55D-70c.
Public comment in opposition to the Chicalese's application was also heard. Adjacent property owners raised concerns regarding grading and drainage, and expressed trepidation that the proposed variances would have a detrimental effect upon neighborhood property values. To placate these expressed concerns, plaintiffs offered the testimony of Alan Saffner, a licensed professional engineer, who explained that the proposed grading and drainage plans would adequately protect the neighborhood.
Following the Board's deliberations, the application was unanimously denied, with one abstention. A memorializing resolution, to this effect was adopted a month later, which indicated that:
(1) the applicant failed to demonstrate undue hardship in that the applicant has had use of the proposed lot for his deck and swimming pool; and
(2) the bulk variance will not promote the purposes of the MLUL, cannot be granted without substantial detriment to the public good and would substantially impair the intent and purpose of the Zoning Plan and Zoning Ordinance of the Township of Monroe.

III. Scope of Review

In reviewing a decision of a local planning board, the Court's power is tightly circumscribed. New Brunswick Cellular Tel. Co. v. Old Bridge Planning Bd., 270 N.J.Super. 122, 134, 636 A.2d 588 (Law Div.1993). In recognition of the fact that local officials are "thoroughly familiar with their community's characteristics and interests and ... are undoubtedly the best equipped to pass initially on such applications for variance," Ward v. Scott, 16 N.J. 16, 105 A.2d 851 (1954), board decisions, "when factually grounded, are cloaked with a presumption of validity, which presumption attaches to both the acts and the motives of its members." New Brunswick Cellular Telephone Company v. Tp. of Edison Zoning Board of Adjustment, 300 *905 N.J.Super. 456, 464, 693 A.2d 180 (Law Div.1997); Pullen v. So. Plainfield Planning Bd., 291 N.J.Super. 303, 312, 677 A.2d 278 (Law Div.1995), aff'd, 291 N.J.Super. 1, 6, 676 A.2d 1095 (App.Div.1996). "So long as there is substantial evidence to support it, the Court may not interfere with or overturn the decision of a municipal board. Even when doubt is entertained as to the wisdom of the Board's action, there can be no judicial declaration of invalidity absent a clear abuse of discretion by the Board." Pullen, supra, 291 N.J.Super. at 312, 677 A.2d 278, aff'd, 291 N.J.Super. 1 at 6, 676 A.2d 1095; New Brunswick Cellular Tel. Co., supra, 270 N.J.Super. at 134, 636 A.2d 588. Consequently, the courts must affirm the Board's decision unless it is arbitrary, unreasonable or capricious. Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965).
On the other hand, however, a board's decision regarding a question of law, such as the scope of its own authority or jurisdiction, is subject to a de novo review by the courts, see TWC Realty Partnership v. Zoning Board of Adjustment of the Tp. of Edison, 315 N.J.Super. 205, 211-12, 717 A.2d 439 (Law Div.1998), aff'd, o.b., 321 N.J.Super. 216, 728 A.2d 338 (App.Div.1999); Grancagnola v. Planning Bd. of Twp. of Verona, 221 N.J.Super. 71, 75-76, n. 5, 533 A.2d 982 (App.Div.1987); New Brunswick Cellular Tel., supra, 300 N.J.Super. at 465, 693 A.2d 180, and is entitled to no deference since a zoning board has "no peculiar skill superior to the courts" regarding purely legal matters. Jantausch v. Bor. of Verona, 41 N.J.Super. 89, 96, 124 A.2d 14 (Law Div.1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957); Pagano v. Zoning Bd. of Adjustment, 257 N.J.Super. 382, 396-97, 608 A.2d 469 (Law Div.1992).

IV. The Decision of the Planning Board

In this case, plaintiffs urged before the Planning Board, and again on appeal, that their proposed subdivision was, as a matter of law, unnecessary, because the separate lots did not merge by operation of law when they acquired title, and that the doctrine articulated in Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967) is inapplicable. In Loechner, supra, our Supreme Court held that the acquisition by a plaintiff of title to undersized, contiguous lots, which were created pursuant to the Old Map Act[1], will result in a "merger" of those lots necessitating subdivision approval if the effect of a sale of anything less than the entire tract is an undersized lot.[2] 49 N.J. at 508, 231 A.2d 553.
The Loechner doctrine is not absolute. Chirichello v. Zoning Board of Adj. of Monmouth Beach, 78 N.J. 544, 397 A.2d 646 (1979) recognized an exception to the general rule that contiguous, undersized lots held in common ownership will merge to eliminate the non-conformity. Where an applicant acquires common ownership of contiguous lots, merger does not automatically occur where the lots in question *906 front two different streets and the acquisition of the additional lots did not transform the initial lot from nonconforming to conforming status, thereby eliminating the need for a variance. Chirichello, supra, 78 N.J. at 553, 397 A.2d 646. In Chirichello, the applicant applied to the Board of Adjustment for bulk variances for frontage and lot area in order to construct a house on an undersized lot. The Board denied the applicant's request, finding that the applicant's hardship was self-created as the applicant had, at one time, owned contiguous lots to the rear of the undersized lot which the Board claimed had merged, resulting in one conforming tract. The Supreme Court held that under those circumstances, no merger had occurred. See also Frizell, New Jersey Practice Land Use Law, s. 13.18 (West 1999) at 238-39, and accompanying illustration; and Cox, New Jersey Zoning and Land Use Administration s. 12-2.2 (GANN, 2000) at 278-83. Although the Court declined to address the issue of whether or not subdivision approval was necessary, because the issue had not been briefed or argued by the parties, the Court cited 2 Rathkopf, The Law of Zoning and Planning s. 32.06(2) at 32-16 (4th ed.1978) for the proposition that:
[T]he general rule that adjoining parcels in one ownership merge so as to constitute only one lot [is not applicable where back to back or "L" shaped lots are involved], since it would require a strained finding that these two lots were intended to form one exceptionally long, narrow plot and would be in total disregard of the fact that each fronts on a different street.
Since the subject property is L-shaped and has frontage on two different streets, plaintiffs claim that the exception set forth in Chirichello applies and merger of the subject lots never occurred.
Predictably, the Board takes the position that the facts of this case are distinguishable from those in Chirichello. The Board argues that, unlike the applicant in Chirichello, these plaintiffs evinced a clear intent to use the property as one lot by virtue of the encroaching presence of the deck and pool, and, that as a result, they are precluded from relying upon the Chirichello exception. Bridge v. Neptune Township Zoning Bd. of Adj., 233 N.J.Super., 587, 559 A.2d 855 (App.Div.1989).
The plaintiffs contend that the Board's reliance on Bridge is misplaced because, unlike the plaintiff in Bridge, who had constructed a single family home over the alleged lot line, plaintiffs here had constructed only a pool and deck over the lot line, which they urge is not the legal equivalent of the "structure" contemplated by the court in Bridge, supra.
The jurisdictional issue thus implicated by the doctrine of merger is both readily apparent and significant. While the planning board is empowered with quasi-judicial authority to adjudicate variance requests, it may do so only in conjunction with its jurisdictional authority to approve subdivisions, site plans or conditional uses under N.J.S.A. 40:55D-60. See, Bridge, supra, 233 N.J.Super. at 596-97, 559 A.2d 855. Absent a merger, no subdivision is requiredand, absent the need for a subdivision, the planning board lacks jurisdiction to adjudicate the requested variance.[3]Id. Consequently, I must decide first, whether and to what extent an applicant who voluntarily invokes the jurisdiction of the planning board is collaterally estopped from later *907 taking a position on appeal that would divest that board of its primary and ancillary jurisdiction over the development application in this case; and secondly, if an applicant is to be precluded from taking such a position on appeal, where and how should the merger issue be resolved.
Any analysis of these jurisdictional issues must begin with the provisions of The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to 129, the enabling authority which defines the limits of a municipality's procedural and substantive power to regulate land development within its borders. TWC Realty, supra, 315 N.J.Super. at 211, 717 A.2d 439. Within that regulatory framework, both the planning and zoning boards have very specific, and mutually exclusive spheres of authority, which delegated powers may not be exercised by any other governmental body or agency. N.J.S.A. 40:55D-20. While each of these municipal boards has the inherent authority to determine the extent and scope of its own jurisdiction concerning purely legal matters,[4] once the planning board assumes jurisdiction over a development application, the merger issue can no longer be raised in that forum. However, an applicant is not without an administrative forum for the resolution of the issue. Where, as in this case, the zoning or administrative officer of the municipality determines that a merger has occurred by operation of law, that decision is appealable to the zoning board of adjustment as of right, pursuant to N.J.S.A. 40:55D-72a. Alternatively, if the applicant asserts that no merger has occurred, the zoning board still has primary jurisdiction under either N.J.S.A. 40:55D-70a (zoning board empowered to hear and decide appeals where it is alleged by the appellant that there is an error in any decision or refusal by an administrative officer based on or made in the enforcement of the zoning ordinance), or N.J.S.A. 40:55D-70c (delineating the zoning board's traditional authority power to grant requests for relief from the provisions of the zoning ordinance, provided that the zoning board agrees that no merger has occurred, thereby obviating the need for a subdivision and preserving its exclusive jurisdiction to grant relief).[5] To the extent that an applicant is aggrieved by a zoning board's determination that a merger has occurred, judicial review is readily available in the Superior Court through a proceeding in lieu of prerogative writ. See R. 4:69. Nor is a property owner precluded from initiating at any time, a declaratory judgment action in the Superior Court in order to resolve the question of whether and to what extent a merger has occurred.
In stark contrast, by asking the planning board to assume jurisdiction over their development application, the plaintiffs, at least impliedly, acknowledged the need for a subdivision, and in so doing, waived any right to collaterally challenge that board's acceptance of jurisdiction in this proceeding. An applicant ought not, in light of the policies promoted by the MLUL and recognized in New Jersey's decisional authority, be permitted to file and proceed with a development application *908 before the planning board only to claim later that the hearing was a nullity following an unfavorable result. To permit the plaintiffs to circumvent the board's decision in this fashion would clearly undermine one of the MLUL's most important purposes"to encourage prompt consideration and disposition of land use applications, avoid unnecessary delays and repetition of effort, and to `encourage coordination of the various public and private procedures and activities shaping land development,' with a view toward `lessening the cost of such development' and to achieve a `more efficient use of land (emphasis added).'" TWC Realty Partnership v. Zoning Board of Adjustment of the Tp. of Edison, 315 N.J.Super. 205, 217, 717 A.2d 439 (Law Div.1998), aff'd o.b., 321 N.J.Super. 216, 728 A.2d 338 (App.Div.1999); citing N.J.S.A. 40:55D-2(a) & (m); Levin v. Tp. of Parsippany-Troy Hills, 82 N.J. 174, 178-79, 411 A.2d 704; Manalapan Holding Co., Inc. v. Planning Board of the Tp. of Hamilton, 92 N.J. 466, 473, 457 A.2d 441 (1983); N.J.S.A. 40:55D-2.
Not only is there a significant potential for prejudice to the publicat large under the scenario posed by plaintiffs[6], but Monroe Township, an indispensable, and quite possibly, the only true party in interest, would have no forum before which to urge its position relative to the question of merger. While the determination of whether or not a party is indispensable depends upon the particular circumstances of each case, it is clear that "`[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting the interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience' are indispensable parties." Garnick v. Serewitch, 39 N.J.Super. 486, 121 A.2d 423 (Ch.Div.1956); quoting Shields v. Barrow, 58 U.S. (17 How. 130), 15 L.Ed. 158 (1855). "It is also a well-settled principle in equity that when the court undertakes to settle a question at issue it should do so effectively and permanently by bringing before it all parties necessary for that purpose." Id.
It is apparent from those cases in which the issue of merger has been addressed that either the municipality itself, or at least its board of adjustment are indispensable[7] to a proper resolution of the issue. See generally, Loechner v. Campoli, supra; Chirichello v. Zoning *909 Board of Adjustment of Borough of Monmouth Beach, 78 N.J. 544, 397 A.2d 646 (1979); Dalton v. Ocean Township Zoning Board of Adjustment, 245 N.J.Super. 453, 586 A.2d 262 (App.Div.1991); Bridge v. Neptune Township Zoning Board of Adjustment, supra; Somol v. Board of Adjustment of Borough of Morris Plains, 277 N.J.Super. 220, 649 A.2d 422 (Law Div. 1994). Consequently, I am satisfied that I should not, in the context of this proceeding, where neither the Township nor the Board of Adjustment are parties, decide whether a merger has occurred.
Since the applicants may not challenge the merger in this proceeding, I must resolve the merits of the plaintiffs' appeal. Indisputably, an applicant has the burden of meeting the statutory variance prerequisites, Chirichello v. Zonong Bd. of Adj. of Monmouth Beach, 78 N.J. 544, 559-560, 397 A.2d 646 (1979), requiring satisfaction of both the "positive" and "negative" criteria. The positive proofs necessary for a c(1) variance focus on the physical characteristics of the subject property. The granting of the variance requires a showing of either 1) "exceptional narrowness, shallowness or shape of specific property"; 2) "exceptional topographic conditions or physical features uniquely affecting a specific piece of property"; or 3) "an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon," such that "the strict application of any regulation...would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property ..." N.J.S.A. 40:55D-70(c)(1). "Undue hardship" involves the underlying notion that no effective use can be made of the property in the event that the variance is denied, Commons v. Westwood Zoning Bd. of Adj., 81 N.J. 597, 605, 410 A.2d 1138 (1980), although a landowner is not entitled to have property zoned for its most profitable use. Terner v. Spyco., Inc., 226 N.J.Super. 532, 547-48, 545 A.2d 192 (App.Div.1988); Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 350, 307 A.2d 563 (1973); Shell Oil Co. v. Zoning Bd. of Adj. of Shrewsbury, 64 N.J. 334, 316 A.2d 5 (1974).
In Chirichello, supra 78 N.J. at 553, 397 A.2d 646, the Supreme Court stated: "In determining whether undue hardship has been shown, it is always appropriate to consider whether the situation was self created." This rule is so firmly implanted that it applies even to subsequent owners of a lot where the previous owner created the hardship. Ketcherick v. Borough of Mountain Lakes Board of Adj., 256 N.J.Super. 647, 649, 654, 607 A.2d 1039 (App.Div.1992) ("where a predecessor in title created the nonconforming use knowing of the zoning restrictions, plaintiff, as successor in title, is not entitled to a variance based on hardship, despite the passage of time and the fact that he is not significantly related to the original wrongdoer.")
Here, once the Board determined factually that plaintiffs had been treating the subject property as one lot, a statutory hardship could no longer be proven because the proposed subdivision, and not any condition pertaining to the land, would be creating the undersized lota "classic" self-created hardship situation. Chirichello, supra, 78 N.J. at 553, 397 A.2d 646; Branagan v. Schettino, 100 N.J.Super. 580, 586, 242 A.2d 853 (App.Div.1968).
Nor can the applicants satisfy the positive criteria for a "flexible c" variance pursuant to N.J.S.A. 40:55d-70c(2), the granting of which requires a showing that "the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment." Id. The record is barren of any testimony which could support a finding that this criteria was satisfied, much less the compelling testimony that would be required to overcome the strong presumption of validity that attaches to the Board's factual findings. TWC Realty, supra, 315 N.J.Super. at 211, 717 A.2d 439; Pullen, *910 supra, 291 N.J.Super. at 312, 677 A.2d 278. No particular purposes of the MLUL were shown to have been advanced by permitting the requested deviation from the bulk requirements of the zone. Mr. Geller's testimony that the proposed site would cause "no encroachment on light, air or open space," at best relates to the negative criteria, and is hardly sufficient to warrant reversal of the Board's denial as arbitrary or unreasonable.[8]

V. Conclusion
For the reasons set forth above, the decision of the planning board, denying plaintiffs' application for major subdivision approval along with bulk variances, is sustained. Counsel for the Board shall submit an appropriate form of judgment under the five-day rule, incorporating this opinion by reference. No costs.
NOTES
[1] By way of contrast, lots created pursuant to a lawful subdivision will not merge, even if they become undersized, following a subsequent downzoning by the municipality. See Pribish v. Corbett, 105 N.J.Super. 407, 252 A.2d 731 (App.Div.1969) (subdivision approval of contiguous nonconforming lots unnecessary where subdivision was previously granted pursuant to the Planning Act of 1953). This protection would logically continue under the Municipal Land Use Law, 40:55D-1 et seq., as well. See Frizell, New Jersey Practice Land Use Law, s. 13.18 (West 1999) at 234-35 (Owners who purchase contiguous lots which have been subdivided under the MLUL are insulated from the merger doctrine because "the purposes of the zoning ordinance which makes the lots nonconforming could not be said to be advanced by merger because, presumably, all the lots in the area are of comparable size.")
[2] Even when they are conforming, contiguous lots delineated on a map filed prior to municipal regulation of subdivisions, will merge. Pasaro Builders v. Piscataway Tp., 184 N.J.Super. 344, 347, 446 A.2d 187 (App.Div.1982).
[3] The planning board's authority in this regard extends only to requests for "c" variances. See N.J.S.A. 40:55D-60. Any request for a "d" variance, even when sought in conjunction with a subdivision, site plan or conditional use, must be adjudicated by the zoning board of adjustment. See N.J.S.A. 40:55D-70; see also TWC Realty Partnership v. Zoning Board of Adjustment of the Tp. of Edison, 315 N.J.Super. 205, 211, 717 A.2d 439 (Law Div.1998), aff'd o.b., 321 N.J.Super. 216, 728 A.2d 338 (App.Div.1999); and see N.J.S.A. 40:55D-20. See also Cox, New Jersey Zoning and Land Use Administration s. 12-2.2 (GANN, 2000) at 284, (noting this jurisdictional dilemma).
[4] See TWC Realty, supra, 315 N.J.Super. at 217, 717 A.2d 439, n.10, aff'd, o.b., 321 N.J.Super. 216, 728 A.2d 338 (App.Div. 1999) (jurisdictional determinations which are purely legal in nature, and do not require plenary or evidentiary hearings, are inherently proper).
[5] Although the decision of the zoning board on a legal issue (e .g. whether a merger has occurred) is neither presumptively correct nor binding upon the court and, is subject to de novo review, Grancagnola v. Planning Bd. of Twp. of Verona, 221 N.J.Super. 71, 75-76, n. 5, 533 A.2d 982 (App.Div.1987); Jantausch v. Bor. of Verona, 41 N.J.Super. 89, 96, 124 A.2d 14 (Law Div.1956) aff'd, 24 N.J. 326, 131 A.2d 881 (1957), the decision of a zoning board as to matters within its exclusive jurisdiction, is binding upon the Municipality and its planning board. Cf. TWC Realty, supra, 315 N.J.Super. at 217, 717 A.2d 439 ("d" variances); Cronin v. Township Committee, 239 N.J.Super. 611, 571 A.2d 1354 (App.Div.1990) (entitlement to protected nonconforming use status).
[6] The possibility of parallel lawsuits, one challenging the planning board's assumption of jurisdiction because of the merger, and one challenging the zoning board's finding that a merger had occurred, is certainly a foreseeable consequence of permitting applicants to challenge planning board denials as plaintiffs seek to do under the circumstances of this case. This multiplicity of litigation could, at least theoretically, lead to inconsistent results regarding whether a merger had occurred, which, necessarily, will result in additional public expenditures by multiple governmental entities. These circumstances could hardly be described as "avoid[ing] unnecessary delay and repetition of effort," or encouraging "coordination of the various public... procedures and activities shaping land development," some of the MLUL's most important goals. Lizak v. Faria, 96 N.J. 482, 496, 476 A.2d 1189 (1984); Levin v. Tp. of Parsippany-Troy Hills, supra, 82 N.J. at 178-79, 411 A.2d 704. See also TWC Realty, 315 N.J.Super. at 223-24, 717 A.2d 439 (economy of effort encouraged in order to reduce costs to members of the public as well as developers).
[7] While the municipality is obviously "interested" in whether or not a merger has occurred by operation of law, the MLUL does seem to contemplate that its interest can be adequately addressed in the first instance by its board of adjustment, since that board has been delegated the exclusive jurisdiction to hear appeals by persons aggrieved by the decision of the code officer denying a building permit because lots had merged and a subdivision was required. See N.J.S.A. 40:55D-72a; and see also N.J.S.A. 40:55D-20 (powers specifically delegated to zoning or planning board shall not be exercised by any other body). Nonetheless, the better practice would seem to require that the municipality be joined in any judicial proceeding where application of the doctrine of merger is to be contested.
[8] Nonetheless, nothing in this opinion forecloses the applicants from pursuing their contention that no merger has occurred on their property, before the appropriate administrative or judicial forum. However, any declaratory judgment action should, consistent with this opinion, include the Township as a proper party in interest.