**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3671-23

FOREVER GREATFUL ART
STUDIOS, LLC and JAMES
RAY,

     Plaintiffs-Appellants,

v.

CITY OF ORANGE TOWNSHIP,

     Defendant-Respondent.

_____

> Submitted June 3, 2025 – Decided June 12, 2025
>
> Before Judges Sumners and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8346-23.
>
> Nicolette G. DeSimone, attorney for appellants.
>
> The Law Office of Marco Di Stefano, LLC, attorney for respondent (Marco Di Stefano, on the brief).

PER CURIAM

Plaintiffs Forever Greatful Art Studios, LLC (FGA) and James Ray appeal from the June 12, 2024 Law Division order dismissing his complaint in lieu of prerogative writs, which sought to reverse defendant City of Orange's (City) denial of a health license for Ray's tattoo and piercing establishment, with prejudice. After reviewing the record, parties' arguments, and applicable legal principles, we affirm.

I.

In March 2023, Ray, FGA's owner, applied to the City for a Central Business personal service establishment zoning permit. In his application, Ray represented that he was seeking a permit for a tattoo and piercing studio in the basement of a building on Main Street. The proposed studio was located in the City's Central Business District, which under the City's Ordinance 210-14(H)(2)(f), included a personal service establishment as a permitted use. Ordinance 210-3 defined a personal service establishment as "[a]n establishment which offers specialized goods and services purchased frequently by the consumer. Included are barbershops, beauty shops, massage facilities, chiropractic clinics, garment repair, laundry cleaning, pressing, dyeing, tailoring, shoe repair, and other similar establishments." The application form had preprinted language, stating "tenants should obtain zoning, building and/or

2

zoning/planning board approvals," and "the City reserve[d] the right to accept or reject any application as determined appropriate in accordance with applicable law."  In March 2023, FGA entered a four-year lease[1] for the basement space, anticipating approvals from the City.  The lease indicated it was "valid subject to the approval of [a z]oning permit."

The City's zoning officer granted plaintiffs' application on May 3, stating the "use [wa]s permitted and approved" and that "[p]rior to opening for business, [FGA] must obtain all necessary permits, inspections and [a] Certificate of Occupancy (CO) from the City."  On May 8, FGA signed a lease rider that provided a two-month rent abatement, because FGA had "just received [a z]oning approval letter."

In June, the City issued FGA plumbing and signage permits.  In August, the City issued FGA a CO, and the City's health inspector and environmental health specialist conducted an inspection of the basement space.  While Ray alleged he received verbal confirmation that the tattoo and piercing studio passed inspection, he also admitted that inspectors told him "he should be aware

---

[1]  We note there are conflicting period terms in the lease.  The discrepancies have no bearing on this appeal.

that the City may be unwilling to issue a health license because an ordinance was not in place."

In September 2023, the City Council proposed an ordinance that would include "body art establishments" as a permitted service establishment use. On November 8, the City Council voted against adopting the proposed ordinance. Shortly thereafter, Ray discovered the City denied FGA a health license.

On December 26, plaintiffs filed an amended complaint in lieu of prerogative writs alleging: the City arbitrarily, capriciously, and unreasonably failed to issue plaintiffs a health license after it issued permits that Ray relied on, and FGA passed a health inspection; and the City's denial of the proposed ordinance permitting tattoo and piercing establishments as a permitted use in the Central Business District was arbitrary, capricious, and unreasonable,[2] or, alternatively, that the court should order the City to issue plaintiffs the health license because a tattoo and piercing studio qualified as a "personal service establishment." After the City filed an answer, the parties conducted discovery.

During the trial, Ray was the only witness and testified to believing the zoning officer's issuance of FGA's zoning permit for a tattoo and piercing studio signified the use was a permitted personal service establishment. In preparing

---

[2] We note at trial, plaintiffs withdrew their claim regarding the proposed ordinance.

A-3671-23

for FGA's opening, Ray incurred thousands of dollars in utility and permit application expenses. Ray acknowledged making purchases before FGA received all the necessary approvals, but he testified he would not have incurred the expenses "if [he] had[ not] received the zoning approval." He acknowledged attending the September 2023 City Council meeting when the proposed ordinance amendment was presented, but he did not address the governing body with his concerns. Ray also did not explain why he did not apply for a use variance after the City Council voted against the ordinance amendment, and the City denied FGA a health license. On cross-examination, Ray conceded multiple times that he understood the City ordinance's definition of a personal service establishment did not specifically include tattoo and piercing establishments, but he maintained the use was not specifically excluded. Ray explained that he: knew the Main Street area because he grew up nearby; had "a big following in the area"; and was unaware of any tattoo studios in the City. The City argued plaintiffs "could have waited for every . . . license and permit to have been granted . . . prior to entering the lease."

The court found the City's health license denial was not arbitrary, capricious, or unreasonable, and plaintiffs failed to meet their burden of proof. The court analyzed Ordinance 210-3's personal service establishment definition

5

and found tattoo and piercing establishments were not "so much within the . . . specifically detailed permitted uses, that the [c]ourt could say it was a reasonable reliance." It also noted that FGA's proposed use involved "nursing supplies" and "medical waste issues," which made the use distinguishable and "outside of . . . the types of uses that we[re] specifically included" as a personal service establishment. Regarding plaintiffs' claim under equitable estoppel, the court acknowledged its obligation to balance the equities and address essential justice, which included considering plaintiffs' interests and the "duty of the municipality to promote the public welfare." It highlighted that equitable estoppel against a public entity "is applied only in very compelling circumstances" and "rarely invoked." While it found Ray was credible overall, the court found his testimony on cross-examination, surrounding issues of his reasonable reliance and understanding of the applicable ordinances, was "less credible," based on his "demeanor change[]," "tone," and "body language."

Specifically, the court found Ray lacked credibility in his testimony regarding his understanding of the City's definition of a personal service establishment and "whether there was a . . . reasonable reliance" on Ordinance 210-3, because Ray was familiar with the Main Street area and knew that there were no tattoo and piercing establishments in the City. The court ultimately

determined plaintiffs "ha[d] not established by a preponderance of the evidence that [Ray] reasonably relied on the issuance of the permit in a way that would serve as a basis for an estoppel."

On appeal, plaintiffs raise the following arguments: (1) the court erred when it determined that a tattoo and piercing studio does not meet the City's definition of a "personal service establishment" under Ordinance 210-3 and 210-14; (2) the City's refusal to issue the health license required for plaintiff to open FGA was arbitrary, capricious, and unreasonable; (3) the court erred when it refused to invoke equitable estoppel based on the overwhelming evidence of plaintiffs' reasonable reliance on the City's conduct; and (4) the court erred because its decision was unsupported by the testimony or evidence.

## II.

"[M]unicipal actions enjoy a presumption of validity." Big Smoke LLC v. Township of W. Milford, 478 N.J. Super. 203, 217 (App. Div. 2024) (alteration in original) (quoting Bryant v. City of Atl. City, 309 N.J. Super. 596, 610 (App. Div. 1998)). "A zoning decision issued by a governing body . . . may be reversed only where it is 'so arbitrary, unreasonable or capricious as to amount to an abuse of discretion.'" Kinderkamack Rd. Assocs., LLC v. Mayor & Council of the Borough of Oradell, 421 N.J. Super. 8, 21 (App. Div. 2011)

(quoting Jayber, Inc. v. Mun. Council of W. Orange, 238 N.J. Super. 165, 173, (App. Div. 1990)). A governing body has "the right to apply its own expertise and knowledge of the community and make the final evaluation based on the record created below." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 198 (App. Div. 2001).

"Although a municipality's informal interpretation of an ordinance is entitled to deference, . . . that deference is not limitless. As with other legislative provisions, the meaning of an ordinance's language is a question of law that [courts] review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005). "This same standard is applied to the interpretation of a municipal law by the trial court." Big Smoke LLC, 478 N.J. Super. at 221 (citing Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 448 N.J. Super. 583, 595 (App. Div. 2017), aff'd, 233 N.J. 546 (2018)).

"Final determinations made by [a] trial court sitting in a non-jury case are subject to a limited and well-established scope of review." City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 271 (App. Div. 2018) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). We do not disturb a trial court's findings of fact "unless convinced that those findings and conclusions [a]re 'so manifestly unsupported by or inconsistent with the competent, relevant

and reasonably credible evidence as to offend the interests of justice.'" Greipenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[W]e defer to the trial court's credibility determinations, because it 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Edwards, 455 N.J. Super. at 272 (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)) (internal quotation marks omitted).

## III.

Plaintiffs contend the court erred in finding that a tattoo and piercing establishment was not a permitted personal service establishment use in the Central Business District. Specifically, plaintiffs argue "it is undeniable that a tattoo parlor fits the definition of 'personal service establishment'" because "specialized goods and services . . . [would be] purchased frequently by the consumer" and Ordinance 210-3's enumerated uses "are in the same realm of facilities." We are unpersuaded.

Neither party disputes that Ordinance 210-3's definition of a personal service establishment does not include tattoo[3] and piercing establishments. The City's ordinance provides that the term personal service establishment includes "barbershops, beauty shops, massage facilities, chiropractic clinics, garment repair, laundry cleaning, pressing, dyeing, tailoring, [and] shoe repair." While the ordinance also permits "other similar establishments," the type of services an establishment would provide is relevant to whether the requested use is permitted. Undisputedly, plaintiffs' body piercing and tattoo studio use involves definite health concerns because using needles and puncturing skin is required. The trial court correctly credited Ray's acknowledgement that the studio would require medical supplies and "involve . . . medical waste disposal." In reviewing the plain language of Ordinance 210-3's personal service establishment definition, particularly the type of facilities delineated, we concur that tattoo and piercing services are distinguishable from the City's permitted "specialized goods and services." The health concerns surrounding tattooing and body

---

[3] The Cambridge Dictionary defines a tattoo as "a permanent image, pattern, or word on the skin that is created by using needles to put colors under the skin." Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/tattoo (last visited June 5, 2025).

piercing services are distinctly different from the enumerated personal service establishment uses.

For the same reasons, we find plaintiffs' argument that the City's failure to issue a health license was arbitrary, capricious, and unreasonable is unsupported. As municipal determinations are presumptively valid, we "may only disturb a '[m]unicipal action . . . . if it is arbitrary, capricious, or unreasonable.'" Big Smoke LLC, 478 N.J. Super at 217 (alteration in original) (quoting Bryant, 309 N.J. Super. at 610).

Finally, we address plaintiffs' argument that the court erred in failing to invoke equitable estoppel. Plaintiffs contend the City should be estopped from denying FGA a health license because "the zoning officer and [p]laintiff[s] acted in good faith[,] . . . the zoning officer's decision that the ordinance allowed issuance of a permit was reasonable[,] and [p]laintiff[s] afterward relied on the permit in good faith." Reviewing the evidence adduced at trial and affording deference to the court's credibility determinations, we discern no merit to plaintiffs' argument.

"It is well established that the doctrine of equitable estoppel is 'rarely invoked against a governmental entity.'" Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 152 (App. Div. 2013) (quoting

11

Middletown Twp. Policemen's Benevolent Ass'n Loc. No. 124 v. Township of Middletown, 162 N.J. 361, 367 (2000)) (internal quotation marks omitted). "However, equitable estoppel will be applied in the appropriate circumstances unless the application would 'prejudice essential governmental functions.'" Middletown, 162 N.J. at 367 (quoting Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999)). "Equitable considerations 'are relevant in assessing governmental conduct' and impose a duty on the court to invoke estoppel when the occasion arises." Meyers v. State Health Benefits Comm'n, 256 N.J. 94, 100 (2023) (quoting Middletown, 162 N.J. at 367).

"[I]n deciding whether or not to invoke equitable estoppel against a municipality, a court must focus on the nature of the action taken by the municipality." Maltese v. Township of N. Brunswick, 353 N.J. Super. 226, 234 (App. Div. 2002) (quoting Wood, 319 N.J. Super. at 656). In addressing the application of equitable estoppel regarding a municipality's issuance of a permit, we stated:

> There is a carefully prescribed dichotomy between instances where equitable estoppel may and may not be applied against a municipality. The dichotomy is between an act which is utterly beyond the jurisdiction of the municipality and an act which involves an irregular exercise of a basic power possessed by the municipality. The former is ultra vires in the primary sense and void, but the latter is ultra vires only in a

12

secondary sense, which would not preclude application of the doctrine of estoppel in the interest of equity and essential justice.

[Bridge v. Neptune Twp. Zoning Bd. of Adjustment, 233 N.J. Super. 587, 597 (App. Div. 1989) (italicization omitted).]

"Principles of equitable estoppel may be applied to a government entity to 'avoid wrong or injury ensuing from reasonable reliance upon such conduct.'" Sellers v. Bd. of Trs., Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 58 (App. Div. 2008) (quoting Skulski v. Nolan, 68 N.J. 179, 198 (1975)). "[T]he doctrine of equitable estoppel is applied against a municipality only in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course." Ibid. (quoting Maltese, 353 N.J. Super. at 244-45).

In addressing the application of equitable estoppel, the court fully considered the parties' actions and circumstances surrounding the City's refusal to issue plaintiffs a health license. It specifically found Ray was less credible when speaking about his reliance on the permits issued to FGA. In determining that Ray did not establish reasonable reliance on the zoning permit, which indicated that the tattoo and piercing establishment was considered a personal service establishment permitted use, the court reasoned that: Ray was familiar with the area; he knew no tattoo and piercing studios were in the vicinity; and

13

Ordinance 210-3's plain language did not specifically reference plaintiffs' proposed use. Ray also failed to explain why he did not address the City Council at the proposed ordinance amendment meeting. The court's detailed "credibility assessments" are supported by the record. Bridge, 233 N.J. Super. at 597.

Plaintiffs failed to overcome the City's significant interest and responsibility in promoting the public welfare. Again, the court correctly noted the health concerns related to plaintiffs' proposed use. We conclude the court appropriately balanced the established facts and equitable interests in determining it would not invoke equitable estoppel against the City. Therefore, we discern no error in the court's dismissal of plaintiffs' claims with prejudice, as compelling circumstances did not exist.

We note plaintiffs are not precluded from applying to the City's zoning board of adjustment for use variance.

To the extent that we have not addressed plaintiffs' remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division